JACKSON *v.* VAN DRESSER *et al.*

(*Jackson*, April Term, 1949.)

Opinion filed April 30, 1949.

CARUTHERS EWING and JAMES L. GARTHRIGHT, JR., both of Memphis, for complainant.

SOHM, HUMPHREYS & LING, of Memphis, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This suit was commenced by Eddie Jackson, as guardian of her sister, Jessie Miller, who on February 9, 1944 had been adjudged insane by the Probate Court of Shelby County in proceedings under the Insanity Law for State Hospitals, Chapter 17, Acts of 1919, carried in the Code, Section 4433 *et seq.* The purpose of the bill was to have judicially declared void and cancelled (1) a registered deed of her ward, Jessie Miller, conveying her home to the defendants Blanchard and wife and (2) two registered deeds of trust executed and delivered by the Blanchards simultaneously with the execution and delivery of the deed and as a part of the same transaction, these

deeds of trust being for the purpose (a) of securing to the defendant, Van Dresser, the payment of $1,000 loaned to the Blanchards and paid by them to the ward as part of the purchase price of the home and (b) to secure the note of the Blanchards for $400 payable to Jessie Miller as the balance of the consideration of $2,000 paid her for the real estate. It is conceded that the consideration paid was the full value of the property on an inflated market.

The transaction took place forty months after the adjudication of insanity and more than thirty-seven months after Jessie Miller had been released from the insane hospital upon the recommendation of its superintendent and on an order of the Probate Court reciting that she had "improved".

No guardian had been appointed at the time of the insanity adjudication, nor subsequently, until approximately two hours after the above mentioned transaction had been completed. The appointment was without notice to Jessie Miller. However, it was not invalid for that reason. *Walker* v. *Graves*, 174 Tenn. 336, 351, 125 S. W. (2d) 154.

The ward disappeared with the money and note about six days after the transaction was completed, and thereafter her guardian instituted this suit. She says that she has not communicated with her ward since the latter's disappearance and does not know where she is.

Oral testimony was submitted as to the facts surrounding the transaction, and as to whether Jessie Miller was of sound mind at that time. Several witnesses so testified.

The Chancellor held that the adjudication of insanity on February 9, 1944 was conclusive evidence, as a matter of law, of the insanity of Jessie Miller at the time she

executed this deed on June 25, 1947, and was constructive notice to these defendants of that fact. He apparently based his decision upon the conclusion that at the time of the transaction in question there was no decree of the Probate Court of Shelby County declaring her to be of sound mind, as provided by Code Sections 9656-9659, to be hereinafter considered.

The Chancellor further found and decreed that in the event of error in the legal conclusions which he reached, still, the *prima facie* presumption of insanity created by the February 1944 adjudication "has not been rebutted by proof offered by the defendants".

Accordingly, the deed and deeds of trust were declared void and ordered cancelled. The Blanchards were adjudged to be not liable on the notes and Van Dresser was ordered to cancel and file them in this cause.

The Court of Appeals, in reversing the decree of the Chancellor, held that (1) the probate decree of April 1944 finding Jessie Miller "sufficiently improved" to be released from the asylum "is sufficiently broad to be considered a legal restoration and discharge" under Code Section 4473, with the result that the Probate Court "had no further jurisdiction of her person, and the appointment of a guardian under the former proceeding was void"; and (2) if the legal conclusion just stated is erroneous, still, the decree of February 9, 1944 adjudging Jessie Miller insane is only *prima facie* evidence of insanity when she subsequently executed this deed on June 25, 1947 and "the *prima facie* evidence of insanity created by the adjudication was outweighed" by the evidence of sanity offered upon the hearing.

The guardian has filed petition for *certiorari* and assigned each of the above stated holdings of the Court of

Appeals as error. The writ has been granted and the case orally argued.

Since our authority in this case instituted by the guardian is confined to a determination of relative legal rights as between the alleged *non compos* and those who procured her deed of conveyance to her home, it would be useless to review the record relative to the conduct of the guardian and of the respondents leading up to and in connection with the consummation of the transaction and the subsequent disappearance of the alleged *non compos* with the $1,600 paid her by respondents. It is sufficient to note that the Blanchards and Van Dresser acted throughout in good faith towards the alleged *non compos,* were not guilty of any fraud upon or overreaching of her. None of them actually knew that she had been adjudged insane; Van Dresser was informed that she had been sent to the Bolivar asylum but was assured by his lawyer that no such adjudication was of record; and the Blanchards, who had no lawyer, were not aware until about three days after the transaction was closed that her sanity had ever been questioned.

We are of the opinion that the Court of Appeals is mistaken in holding that under Code Section 4473 the decree of April 25, 1944 "is sufficiently broad to be considered a legal restoration and discharge". That decree recites only that Jessie Miller has so "sufficiently improved that she may be released from said institution". It twice refers to her as a *"non compos mentis"*. While Code Section 4473 authorizes, upon approval of the Court, the release of a patient who has improved, it authorizes a certificate of restoration and discharge only when the person "is released because of recovery".

So, there was no adjudication declaring Jessie of sound mind and restoring her to such status at the time she executed the deed that is questioned by this suit. This fact makes it necessary to determine whether the insanity adjudication of February 9, 1944 is *prima facie* evidence, as insisted by the respondents, or conclusive evidence, as a matter of law, as insisted by the petitioner, of the insanity of Jessie Miller at the time she executed the challenged deed on June 25, 1947.

Until the enactment in 1919 of the Insanity Law for State Hospitals, jurisdiction to declare persons of unsound mind and take control of their property was vested in the County Court by an enactment of 1797, Code Sections 9613-9621, and extended to Chancery Court by an Act of 1851, Code Sections 9622-9636. During all this period there was no statutory provision giving any Court jurisdiction to ascertain and judicially declare a restoration to sanity. Possibly, inherent authority to so declare was had, however, by the Court rendering the decree of insanity.

As a result of the situation just stated, it seems to have been consistently held by our Courts until the enactment of Chapter 102 of the Acts of 1921, Code Sections 9656-9659, that an adjudication of insanity is only *prima facie* evidence of such status when there is called into question a contract made by a person subsequent to the decree adjudging such person a lunatic. *Thomasson* v. *Kercheval*, 29 Tenn. 322, 323, 324; *Haynes* v. *Swann*, 53 Tenn. 560, 587; *McDowell* v. *Morrell*, 73 Tenn. 278, 279, 285.

The case of *Brewer* v. *Griggs*, 10 Tenn. App. 378, 390, decided in 1929 likewise so held. *Certiorari* was denied. However, the insanity proceedings in that case were void *ab initio*. The case is not to be regarded, therefore,

as a precedent in ascertaining the rule applicable after the enactment of the 1921 Act.

Some time during the December Term 1920, this Court held in *Pritchett* v. *Thomas Plater & Co.*, 144 Tenn. 406, 232 S. W. 961, 968, with reference to an insanity adjudication of 1912, that ''contracts made by an insane person after he has been regularly adjudged insane are generally held to be absolutely void''. This statement is likewise not to be regarded as controlling the question we have here. This is because the issue before the Court there was the validity of a contract made by Pritchett prior to the time he was adjudged a lunatic.

It was with the law in this condition that the Legislature enacted Chapter 102 of the Acts of 1921. That law provided that a person who had been declared ''a lunatic, or a person of unsound mind, as provided by law, and afterwards become restored in mind'' might be declared by the County Court of sound mind and the guardianship, if any, terminated upon petition of the person affected and the submission of evidence satisfactory to the Court, including that of two reputable physicians.

Other than *Brown* v. *Eckhardt*, 23 Tenn. App. 217, 230, 129 S. W. (2d) 1122, and *Pritchett* v. *Thomas Plater & Co., supra,* no one of our decisions since the enactment of the 1921 Act, in so far as we have been able to find, directly holds that an adjudication of insanity is conclusive evidence, as a matter of law, of a continuation of that status until the actual entry of a restoration decree. However, several of our decisions so indicate without referring to the 1921 Act. *Brown* v. *Eckhardt, supra;* *Bradford* v. *American Nat. Bank*, 25 Tenn. App. 413, 419, 158 S. W. (2d) 366; *Kirk* v. *Sumner County Bk. & Tr. Co.*

*et al.*, 25 Tenn. App. 150, 156, 153 S. W. (2d) 139; *Walker* v. *Graves*, 174 Tenn. 336, 341, 125 S. W. (2d) 154; *Hannon* v. *Hannon*, 185 Tenn. 307, 310, 206 S. W. (2d) 305. *Brown* v. *Eckhardt, supra*, explicitly so holds, but it does so upon the authority of the *dictum* in *Pritchett* v. *Thomas Plater & Co., supra*.

Cases upon the question being considered here were annotated in Volumes 7 and 68 A. L. R. pages 584 and 1314, respectively. The annotator in 68 A. L. R. page 1314, after observing that there is a conflict of authority upon whether an adjudication of insanity is conclusive or *prima facie* evidence of subsequent incapacity to contract, states that the question is "to a great extent . . . caused by the nature of the proceedings and their effect as governed by local statutes". Our statute, the 1921 Act, embraces all persons who have been declared insane "as provided by law". This includes our 1919 Insanity Law for State Hospitals, *Johnson* v. *Nelms*, 171 Tenn. 54, 60, 100 S. W. (2d) 648, under which Jessie Miller was adjudged insane.

 In considering the legal effect of the 1921 Act, there is at once suggested the question as to why the law was enacted. The answer seems apparent. As reflected by numerous of our reported decisions, the *prima facie* evidence rule existing at least until the enactment of the 1921 Act was productive of considerable litigation throughout the years and left disturbed and unsettled the quiet assurance of title to property which had been conveyed by persons previously adjudged insane and left doubt as to whether their contracts would be upheld. Such a situation was and is palpably undesirable. It is reasonable to conclude that the Act was enacted to eliminate that situation, the undesirability of which seems

to be clearly portrayed in the case of *Wadsworth* v. *Sharpsteen*, 8 N. Y. 388, 59 Am. Dec. 499 and *Imhoff* v. *Witmer*, 31 Pa. 243, as quoted from in the California case of *Kellogg* v. *Cochran*, 87 Cal. 192, 25 P. 677, 678, 12 L. R. A. 104, 105. (The California case did not, however, follow those opinions.) The quotation referred to is this: ''It is not necessary to adduce reasons to prove the self-evident proposition that, to admit the capacity of control to exist in the lunatic or habitual drunkard over his estate, after inquisition settling his condition in this respect, or submit it to be controverted by evidence of lucid intervals or sobriety at the moment of contracting, would leave the estates of these unfortunate classes about as much exposed as before proceedings had in regard to them''.

It further quotes the *New York* case to this effect: ''If it were otherwise, the proceedings would furnish a very ineffectual security against waste and improvidence. Every transaction would be open to litigation * * *.''

We are of the opinion that by reason of Chapter 102 of the Acts of 1921, being Sections 9656-9659, an adjudication of insanity is conclusive evidence, as a matter of law, of a continuation of that status until the person adjudged insane has subsequently been declared of sound mind by a decree entered pursuant to the provisions of those Code sections, and that the Chancellor was, therefore, correct in declaring void the deed and deeds of trust in question.

The Chancellor in adjudging the amount of compensation to which the solicitor for the guardian was entitled for his services, declared a lien for the payment thereof upon the property of the ward but provided that it should

"be realized only under orders of this Court". It is, therefore, necessary to remand this case for such further proceedings as may be necessary.

The Court thinks that the equities of this case require the adjudication of the costs of the appeal against Van Dresser and his sureties without contribution by the Blanchards.

The decree of the Court of Appeals is reversed. The decree of the Chancellor is affirmed with costs of the appeal adjudged against Van Dresser and his sureties. The cause is remanded for such further appropriate proceedings as may be required.

All concur.