GILES *et al. v.* STATE *ex rel.* GILES.

(*Knoxville,* September Term, 1950.)

Opinion filed December 9, 1950.

W. A. WILKERSON, GUS A. WOOD, JR., L. H. GAMMON, and JOHN C. GOINS, all of Chattanooga, for plaintiffs in error.

FLETCHER MORGAN and C. B. COLEMAN, both of Chattanooga, for defendants in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

As a result of an inquisition of lunacy commenced July 24, 1940 under Code Section 9613 et seq. upon the petition of David Giles, an order was entered in the County Court of Hamilton County on August 7, 1940

adjudging Miss Margaret Giles, the sister of David Giles, to be a person of unsound mind. There was no adjudication committing her to confinement.

On August 28, 1940 this brother filed a petition against this sister in the County Court of Hamilton County under the Provisions of Chapter 17 of the Acts of 1919, known as the Insanity Law for State Hospitals, and carried in the Code at Section 4436 et seq. His petition alleged ''suspected'' insanity of his sister. On the following day an order was entered in these proceedings adjudging Miss Giles to be insane and committing her to the Eastern State Hospital on the finding that her being at large is injurious to her and disadvantageous to the community. No reference was had in this proceeding to the previous proceeding instituted on July 24, 1940.

On December 6, 1949 Miss Giles filed the habeas corpus petition with which we are here concerned for the purpose of procuring a release from the hospital on the ground that the adjudication of insanity in each of the two cases mentioned is void; hence, that her restraint is illegal. The persons made respondents to her petition are her aforesaid brother, David Giles, and Dr. Peterson, the superintendent of this hospital, wherein Miss Giles was confined during this period.

The answer of David Giles denies all allegations of the petition material to the determinative question here. The answer of Dr. Peterson is that he, as superintendent of the Eastern State Hospital, is holding the relator, Miss Giles, by virtue of the mittimus issued by the County Court of Hamilton County on August 29, 1940. That commitment was issued pursuant to the proceeding instituted on August 28, 1940 (the second proceeding)

under the 1919 Act, Code Section 4436 et seq. The answer of Dr. Peterson further is that relator continues mentally ill and in need of hospitalization.

After a hearing which has made a larger than usual record, but without evidence other than the records in the two cases mentioned, it was correctly held that the commitment was made in the proceeding commenced on August 28, 1940 under Chapter 17 of the Acts of 1919, Code Section 4436 et seq., particularly, 4451, and was independent of the previous proceeding commenced on July 24, 1940 under Code Section 9613 et seq. No adjudication, therefore, was made with reference to the validity of the first proceeding other than that it was irregular. However, is was decreed by the Court that the proceeding commenced on August 28, 1940 under the 1919 Act "was void because the statutory provisions were not followed and for the further reason that issuance of procees on the 28th day of August, 1940, and the setting of the trial at 9 A. M. the next day was a denial to petitioner of her rights secured under the Federal Constitution and that any attempted adjudication of the sanity of Margaret Giles thereunder were and are void."

Accordingly, the habeas corpus petition was sustained and it was ordered that Miss Giles be "set at liberty". David Giles and Dr. Peterson, the respondents to the habeas corpus petition, were allowed an appeal to this Court.

■ It is insisted here in behalf of Miss Giles that neither her brother nor Dr. Peterson have the right of appeal, because, so it is said, neither has any legal interest in the controversy. *Harmon v. Harmon,* 141 Tenn. 64, 206 S. W. 333, is cited in support of that

insistence. That was a case in which a petitioner, who instituted proceedings to have his brother declared insane, was allowed an appeal from the decree of the County Court adjudging the brother not to be insane. The appellant had no interest in the estate nor legally obligated to support the brother whom he petitioned the Court to declare insane. So, it was held that he was not entitled to appeal. However applicable here the holding in that case might be to the brother, David Giles, it is not applicable to Dr. Peterson, who, as superintendent of this hospital, is restraining Miss Giles in the performance of his duty under a mittimus issued pursuant to a decree of Court having jurisdiction of the person and subject matter. As such superintendent, therefore, he does have an official interest in the matter.

This case further differs from the Harmon case in that it was not a habeas corpus proceeding, as here, wherein there is Code Section 9716 providing that any defendant to a habeas corpus proceeding has the right of appeal from any judgment rendered against such party by an inferior court. There has been a decree in this case rendered against Dr. Peterson whereby he is ordered to release from custody one whom he is purporting to hold pursuant to his official duty in response to a decree of Court. We are of the opinion that he is given the right of appeal by this Code section.

Inasmuch as the question made by this appeal of Dr. Peterson must be determined without regard to whether the brother had the right of appeal, it would seem that any discussion as to the brother's right within the premises would be purely academic. Perhaps he should not have been made a party respondent to this suit, wherein the only question involved is whether Miss

Giles is being illegally restrained of her liberty by the superintendent of the Eastern State Hospital.

Miss Giles is being restrained by the superintendent of the hospital solely by virtue of the authority of the insanity adjudication rendered in the second proceeding on August 29, 1940 pursuant to Code Section 4451, a part of Chapter 17 of the Acts of 1919. So, the truth of Miss Giles' assertion that her restraint is illegal must be decided solely by determination of whether this record discloses said insanity adjudication of August 29, 1940 to be invalid when tested by certain well established rules hereinafter stated which the Courts are compelled to follow in deciding the question when made by habeas corpus petition.

The writ of habeas corpus may not be employed as the means of assaulting a judgment of court unless the judgment assailed is void. *State ex rel. Grandstaff* v. *Gore,* 182 Tenn. 94, 98, 184 S. W. (2d) 366. The reason for this is that the use of the writ as the weapon of assault is a collateral, rather than a direct assault upon the judgment.

When an assault is collaterally made upon a judgment of a Court of general jurisdiction by parties or their privies, such judgment may be held void only when its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered. Otherwise, it is conclusively presumed to be valid on such collateral attack. *Magevney* v. *Karsch,* 167 Tenn. 32, 46, 65 S. W. (2d) 562, 92 A. L. R. 343.

The County Court in insanity proceedings under the 1919 Act, of which Code Section 4451 is a part, acts as a Court of general juridiction, *McCartney* v. *Gamble,*

184 Tenn. 243, 246, 198 S. W. (2d) 552, and cases there cited.

Since Miss Giles was a party to the insanity decree rendered by the County Court over a matter as to which its jurisdiction was general, her assault upon that decree by the writ of habeas corpus will be repulsed unless the invalidity of that decree appears upon its face, or in the record of the case in which it was rendered.

■ The judgment rendered by the Trial Court does not point out what statutory provisions, it says, were not followed in the rendition of this insanity decree. Neither that adjudication nor the record in the case in which it was rendered discloses a failure to follow any of the requirements of the statute under which the proceeding was had. Therefore, under the law the conclusive presumption must be that the requisite statutory provisions were followed, *McCartney* v. *Gamble,* supra, 184 Tenn. at page 246, 198 S. W. (2d) at page 554. Moreover, insofar as this Court can find, the record in that proceeding affirmatively discloses an adherence to all the statutory provisions.

■ The petition makes the allegations that Miss Giles was not in fact taken before the County Court and that the guardian ad litem was not a lawyer, nor capable. Since the insanity decree and the record in which that decree was rendered do not affirmatively disclose such allegations to be the facts, it follows that the contrary of those allegations must be conclusively presumed in this collateral attack on that decree rendered by a Court having general jurisdiction over the matter with which it was dealing. *McCartney* v. *Gamble,* supra, 184 Tenn. at page 248, 198 S. W. (2d) at page 555.

 As a matter of fact, the insanity decree affirmatively recites that Miss Giles was brought before the Court. Under the McCartney Case that recitation is likewise conclusive on this collateral attack.

 Code Section 4457 provides that the guardian ad litem need not be an attorney. Neither the insanity decree nor the record in that case disclose such guardian ad litem to be an incapable person. Such allegation cannot, therefore, be considered in testing Miss Giles' assertion that the insanity decree is invalid.

 It is true that the record does not disclose that a jury was had in this hearing as to the "suspected" insanity of Miss Giles. A trial by a jury under the 1919 Insanity Act is not mandatory unless demanded by the guardian ad litem or the party. *Johnson* v. *Nelms,* 171 Tenn. 54, 64, 100 S. W. (2d) 648. Since this record does not affirmatively disclose such a demand it must be conclusively presumed upon this collateral attack that no such demand was made.

 The Trial Judge thought, and so held, that Miss Giles had been deprived of "rights secured her under the Federal Constitution" by reason of the fact that the hearing in the insanity case was had on the day following service of process and notice. While many may agree with the feeling of the Trial Judge that such a hearing was rather hasty, yet to agree with that conclusion in this proceeding it would be necessary to presume that a trial on the day following service of process and notice is conclusive evidence, as a matter of law, that some right under the due process clause or other provision of the Federal Constitution was violated. We do not see how we would be justified in indulging such a conclusive presumption.

■ Perhaps the speedy hearing was had in an effort to comply with Code Section 4451 providing that such a hearing "shall be heard and determined as soon as practicable after complaint is made". It is generally known that there are many insanity cases in which it is practicable and desirable to have the hearing on the day following service of process and notice. The circumstances of each case will invoke the exercise of a discretion upon the part of the Trial Judge as to the time of such hearing. When neither the insanity decree nor the record in that case affirmatively disclose any abuse of that discretion, the Court is without authority to interfere in considering the merits of a collateral attack upon the insanity decree.

■ After the Trial Judge had announced his decision to sustain this petition the attorneys for Miss Giles did for the first time assert as another ground for the invalidity of the insanity decree the assertion that the judge who presided at the hearing of the insanity proceeding in question was County Judge "pro tempore"; that his authority as such official to hear the case purported to be given by Chapter 474 of the Private Acts of 1931 applicable to Hamilton County; that such Private Act was unconstitutional for reasons unnecessary here to state; hence, that the insanity decree was void.

The insanity decree purports to be signed by the presiding official in his capacity as "County Judge or Chairman". This is in accordance with Code Section 4451. There is nothing in the decree or the record to indicate that this person was not then the County Judge or Chairman, nor to indicate that he was serving as "County Judge pro tempore"; nevertheless, the trial judge in the instant case rejected this insistence of Miss

Giles on the ground that the presiding official was a judge de facto. Hence, that the judgment so rendered was not invalid by reason of the insistence stated.

In the opinion of this Court the just above stated conclusion of the trial judge is correct. Hence, it will not be necessary to notice any of the other several grounds made in opposition to the insistence just stated. If the official who presided at the insanity trial was County Judge pro tempore and purported to be given authority by the Private Act in question to preside at this hearing, then he was presiding under color of title, even though the act be unconstitutional. Hence, he was a judge de facto with the result that the judgment so rendered is not invalid. *Ridout* v. *State,* 161 Tenn. 248, 264-265, 267, 268, 30 S. W. (2d) 255, 260, 71 A. L. R. 830. As observed in that case, "the consequences of holding a contrary doctrine would be alarming, and it is very easy to see the most serious results would follow".

It is obvious from the discussion had in this opinion that the judgment of the Trial Court must be reversed.

 Although Miss Giles had been adjudged insane, she was, of course, permitted to prosecute this suit. The Court costs which have accrued are the result of services which were necessary to her prosecution of the suit. Those services were not furnished voluntarily by the clerks and sheriff, but under the compulsion of law. These officials are entitled to receive the compensation fixed by law for the services which they were thus compelled to render. As a matter of equity, Miss Giles, and only Miss Giles, is the one who should be required to pay for those services. To require this of her would probably do no substantial violence to establish legal

principles, notwithstanding the adjudication of insanity, since the services rendered her were necessary to the conducting of the suit which she was permitted to maintain. Under the common law an insane person is liable for necessities furnished. With reference to an insane person the word "necessities" should in common sense not be limited in meaning to food and clothes, but should always be construed in accordance with the exigencies of the occasion.

The judgment of the Court below will be reversed and the cause remanded for the entry of an order dismissing the habeas corpus petition and ordering the petitioner, Miss Margaret Giles, restored to the superintendent of the Eastern State Hospital, and such further incidental provisions as may be necessary to the enforcement of her return there. All costs in both Courts will be adjudged against Miss Margaret Giles payable out of her estate.

BURNETT, J., did not participate in the consideration of this case.