GIBBS *v.* STATE.

(*Jackson,* April Term, 1951.)

Opinion filed June 16, 1951.

J. W. RANKIN, of Martin, HARRY E. JONES, of Dresden, and MILES & MILES, of Union City, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction under Code Sec. 10825, of maliciously shooting into his neighbor's house and sentence to punishment of not more than two years in the penitentiary for the offense.

The pertinent provision of Code Sec. 10825 is as follows: "Any person who wantonly or maliciously either shoots or throws any missile calculated to produce death or great bodily harm, at or into any dwelling or any other house which is being used or occupied . . . shall be declared guilty of a felony, and, upon conviction, shall undergo confinement in the penitentiary for a period not less than one nor more than five years."

The Defendant and the State's witness, Joe Tomlinson, were neighbors. At about 9:30 o'clock on the morning of February 1, 1951, Joe Tomlinson and his wife, heard shots at the house of the Defendant, and a few minutes later, he appeared at a gate some 70 yards from the home of the Tomlinsons. He aimed and fired a shotgun which he was carrying, the shots striking the front of

the Tomlinson's house. The Tomlinsons then took refuge in a closet, and while there, saw Defendant approach to within 40 or 45 feet of their house, and fire into it again. Both Tomlinson and his wife testified that while Defendant was firing the last shot, he was cursing Tomlinson and daring him to show himself. The testimony of the Tomlinsons is corroborated in large part by the testimony of a disinterested witness, Derryberry.

Ten assignments of error are made to support the appeal, but the scope of our review is limited by the following statement in Defendant's brief, which apparently, the State did not notice: "We think that the preponderance of the evidence establishes that the defendant did shoot into the Tomlinson house but that the defendant was not guilty of any offense in so doing and should not have been convicted and that the Court upon Motion for New Trial should have set aside the verdict of the jury. The evidence of the State and of the defendant shows that the defendant was a very drunk man on the morning of February 1, 1950." (Br. p. 16.)

In view of this admission, the only question to be determined is whether at the time of the shooting, Defendant was or was not *legally insane*,—that is to say, whether he knew and appreciated the difference between right and wrong, and the criminal nature of his actions, for the law has fixed no more exact or elaborate a criterion for criminal responsibility. *Wilcox* v. *State*, 94 Tenn. 106, 28 S. W. 312; *Watson* v. *State*, 133 Tenn. 198, 180 S. W. 168; *McElroy* v. *State*, 146 Tenn. 442, 242 S. W. 883; *Temples* v. *State*, 183 Tenn. 531, 194 S. W. (2d) 332.

The Defendant insists that he had been drinking heavily on the morning of February 1, 1951, immediately prior to the shooting, and that he did not know what he

was doing, and does not now remember what he did at the time of the shooting. As part of his case, Defendant introduced the Clerk of the County Court of Weakley County, who testified that in November 1948, Defendant was committed to Bolivar as an alcoholic, and that he was paroled from that institution in January 1949, but that no order of restoration had been entered on February 1, 1951. Under well established legal rules, *Bond* v. *State*, 129 Tenn. 75, 165 S. W. 229, the only effect that this had was to substitute for the usual presumption of sanity, a presumption of insanity, which was one of fact and effective only so long as there was no positive evidence to the contrary. *Bond* v. *State*, supra; Thayer, A Preliminary Treatise on Evidence at the Common Law, p. 313 et seq.; 28 Am. Jur., Insane and Other Incompetent Persons, Sec. 121; compare,—*Armstrong* v. *State*, 30 Fla. 170, 11 So. 618; 17 L. R. A. 484, and annotation in 76 Am. St. Rep. p. 85.

So the only question presented by this appeal is a determination whether there was positive evidence of sanity to rebut the presumption of insanity, and so warrant the jury in its finding that at the time of the shooting, the Defendant knew the difference between right and wrong, and so was criminally responsible for his acts. We find ample evidence to support the jury's finding. Derryberry, apparently an entirely disinterested witness, did not identify Defendant, but did testify that he heard and saw "some man" calling on the occupants of the Tomlinson house, to come out, and firing into the house. The Tomlinsons both testified that Defendant cursed Tomlinson by name and dared him to come out. One of the arresting officers, Brummitt, while testifying that the Defendant was noticeably drinking, testified that

he had seen him drunker on other occasions, and that he showed the officers how to unload the shotgun and gave them intelligent replies to their questions. The testimony of one of Defendant's own witnesses, Elder, was sufficient to support the jury's finding, since he testified of the action and conduct of the Defendant immediately prior to the shooting:

"Q. What was it you say, if anything, unusual about him? What was it? A. I didn't see anything unusual about him.

"Q. I am talking about when you saw him shooting? A. I know he had a few drinks in him.

"Q. What time was you in? A. Eight o'clock.

"Q. You talk to him? A. Yes.

"Q. What did you talk about? A. The weather; couldn't work.

"Q. He talk with good sense? A. He talked good sense, yes.

"Q. You talked about the weather, whether you would work or not? A. That's right."

The subjective state of mind can only be determined by the objective words and acts of the Defendant immediately before, at, and after the offense. *Mullendore* v. State, 183 Tenn. 53, 191 S. W. (2d) 149.

Defendant relies both in his original and supplemental brief, on *Jackson* v. *Van Dresser,* 188 Tenn. 384, 219 S. W. (2d) 896. That was a civil, not a criminal case, and the only question presented was whether an adjudicated non compos mentis, prior to any proceedings for restoration of rights, could validly execute a deed. We held that she could not. In the Jackson case no question of criminal responsibility was involved, and the decision did not alter the rule established in *Bond* v. *State,* supra,

which, since the delivery of the opinion in 1913, has been frequently followed and approved: *Temples* v. *State,* 183 Tenn. 531, 537, 194 S. W. (2d) 332; *Drye* v. *State,* 181 Tenn. 637, 642, 184 S. W. (2d) 10; *Watson* v. *State,* 133 Tenn. 198, 211, 180 S. W. 168; *McElroy* v. *State,* 146 Tenn. 442, 449, 242 S. W. 883; *Davis* v. *State,* 161 Tenn. 23, 33, 28 S. W. (2d) 993. In the present case, we hold that there was competent evidence in this criminal proceeding to rebut the presumption raised by the former adjudication of insanity, and to justify the jury's verdict that at the time of the malicious shooting, the Defendant knew the difference between right and wrong, and was criminally responsible for his unlawful acts.

For the reasons stated, the assignments of error are overruled and the judgment is affirmed.

All concur.