# B. FRANK CRADDOCK et al. v. C. C. CALCUTT et al.—285 S. W. (2d) 528.

Western Section. July 7, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

Lloyd S. Adams, of Humboldt, and J. Granville Farrar, of Memphis, for petitioner, B. Frank Craddock.

Franklin W. Latta, of Dyersburg, for respondent, C. C. Calcutt.

BEJACH, J. The question before the Court in this cause arises out of a scire facias issued by this Court to revive a judgment in favor of B. Frank Craddock against C. C. Calcutt, rendered by this Court, October 4, 1945, together with costs of the cause,—said judgment or decree of this Court being recorded in Minute Book 37, at page 83 of the minutes of this Court.

The present controversy began with the filing of a motion by B. Frank Craddock through his solicitors of record, Lloyd S. Adams and Granville Farrar, on April 22, 1955, for the issuance of a writ of scire facias to revive the judgment here involved. It appears from said motion and certified copies of the decrees of this Court attached to said motion, that on the 4th day of October, 1945, a decree was entered in this Court against defendant, C. C. Calcutt, and in favor of complainant, B. Frank Craddock, for the sum of $111,086.29 with interest from July 13, 1943, at the rate of 6% per annum, plus the costs of the cause, of which amount it was decreed that said B. Frank Craddock recover of St. Paul Mercury Indemnity Company $35,000 on its indemnity bond filed January 28, 1944. The decree in favor of said B. Frank Craddock also awarded a lien against said judgment and recovery in favor of Lloyd S. Adams and Granville Farrar, counsel of record in the cause; and it was provided that in the event said counsel are unable to agree upon the amount of their compensation and the extent of their said lien, that this cause might be remanded to the Clerk and Master of the Chancery Court of Dyer County, from which Court this cause had been appealed to the Court of Appeals. It further appeared

that on petition to rehear filed by the St. Paul Mercury Indemnity Company, its petition to rehear was granted and the judgment or decree against it for $35,000 vacated, the cause being remanded as to it to the Chancery Court of Dyer County for a reference for accounting by the defendant, C. C. Calcutt, in his capacity as receiver, in which capacity, only, the surety company was liable for his defalcations,—the judgment against Calcutt having been rendered because of defalcations in his trusteeship, as well as his receivership, in which latter capacity, only, the surety company was responsible. It further appears that on such remand, a settlement was made with the St. Paul Mercury Indemnity Company for the sum of $5,000, credit of which amount is tendered on the judgment of this Court for $111,086.29. Said motion for a writ of scire facias was granted by this Court April 22, 1955, and pursuant thereto, the writ of scire facias was issued by the Clerk of this Court. Same was made returnable May 16, 1955.

On May 16, 1955, the respondent, C. C. Calcutt, filed his answer. This answer asserts that defendant, C. C. Calcutt, owes complainant, B. Frank Craddock, nothing, and sets up, by way of substantiating such assertion, a release purporting to have been executed by said B. Frank Craddock under date of March 5, 1951. The answer tenders the original of the release, a photostatic copy of which is attached to the answer, and requests that same be recorded on the minutes of this Court. The answer, also, contends that the sum of $5,000 paid by the St. Paul Mercury Indemnity Co. should have been used to pay the costs of this cause and to discharge the lien in favor of attorneys, Lloyd S. Adams and Granville Farrar, and that said $5,000 not having been used for that purpose, the aforesaid attorneys have been guilty of such laches

in the recovery of their attorney's fees as to prejudice the rights of respondent, and that, therefore, respondent denies that said Lloyd S. Adams and Granville Farrar have any interest in this matter, because of the release referred to above. The answer, also, denies each and every allegation of the motion for a writ of scire facias and prays to be dismissed and to be permitted to record said release on the minutes of this Court.

On May 23, 1955, complainant, B. Frank Craddock, and his solicitors of record filed a replication. This replication sets up that the purported release of the judgment in this cause of $111,086.29 is void because at the time it is alleged to have been executed by B. Frank Craddock, he was a person of unsound mind, and if executed by him, it was induced by fraud. The replication asserts that on August 23, 1948, complainant, B. Frank Craddock, was adjudged to be insane under the provisions of Chapter 102 of the Public Acts of 1921, Code, Sections 9656-9659, and was committed to the Western State Hospital by decree of the County Court of Gibson County, Tennessee, as appears in Insanity Book No. 1, page 253 in the office of the County Court Clerk of Gibson County, Tennessee. A certified copy of said decree is attached to the replication, marked Exhibit A. The reference to the Act of 1921 is obviously a mistake, as that Act, Code, Sections 9656-9659, deals with restoration of competency to persons previously adjudged insane. The Order of Restoration, Exhibit B, was authorized by the 1921 Act. An examination of the certified copy of the order of commitment, Exhibit A to the Replication, indicates that the commitment was made under authority of Code, Section 4451, Ch. 17, See. 9, Pub. Acts of 1919. The replication, also, asserts that on the 18th day of April, 1955, the legal competency of complainant, B. Frank Craddock, was restored to him

by decree of the County Court of Gibson County, Tennessee,—such restoration appearing of record in the office of the Clerk of the County Court of Gibson County, Tennessee, in Quorum Court Minute Book, No. 22 at pages 99-100. A certified copy of the decree restoring competency to Craddock is also attached and made part of the replication. This is Exhibit B. referred to· above. The replication asserts that B. Frank Craddock was, by law, conclusively presumed to have been insane, and that the alleged settlement and release of said judgment is, therefore, void.

The replication also sets up, by way of explanation and substantiation of the charge of fraud, that the release asserted by respondent, C. C. Calcutt, was executed in connection with an escrow agreement between complainant, B. Frank Craddock and C. C. Calcutt and the Central Bank and Trust Company in Des Moines, Iowa,—which escrow agreement refers to the judgment in this Court of $111,086.29, and provides that the parties agreed to prosecute a claim against the U. S. Dept. of Agriculture and the War Production Board, and that the recovery, if any, should be divided as set forth in said agreement; and that as a part of the escrow agreement, a conditional release was signed by B. Frank Craddock, and delivered to the escrow agent to be delivered to C. C. Calcutt, if and when the claim against the U. S. Dept. of Agriculture and the War Production Board was allowed. The replication sets out that it was further agreed, in said escrow agreement, that ''if no funds or monies are received by the Central National Bank and Trust Company, as escrow agent, within a period of three years from and after the date of this escrow agreement, said Central National Bank and Trust Company, as escrow agent, shall return to the parties all agreements, papers and

documents''. It asserts that the claims against the Department of Agriculture and the War Production Board were not allowed, that no monies were received within three years, and that, therefore, the escrow agreement expired by limitation on April 13, 1954. The replication asserts that, after that date, demand was made by B. Frank Craddock on the Central National Bank and Trust Co. to return said release, but that the Bank refused to release any of the papers unless instructed to do so by all the parties to the escrow agreement. An exact copy of said escrow agreement is attached to the replication, marked Exhibit C for identification. The replication asserts that the release relied on by respondent, C. C. Calcutt, was, in any event, a conditional one; but that whether so considered or not, same was executed while the said B. Frank Craddock was insane and that same is, therefore, void.

With reference to the $5,000 paid to B. Frank Craddock by St. Paul Mercury Indemnity Company, the replication sets up that this was paid as a compromise settlement with the Indemnity Company for its liability on the bond of C. C. Calcutt as receiver, for his failure to account for certain assets that came into his hands as such; and that it was expressly understood and agreed by and between the complainant, B. Frank Craddock, and the St. Paul Mercury Company, that said payments should not, in any way, affect the rights of B. Frank Craddock against C. C. Calcutt, and that his judgment should remain wholly unaffected by reason of the compromise settlement; and that there was no agreement affecting the costs; and it had nothing to do with the payment of costs of this cause or of the fees of solicitors for complainant.

With reference to the claim set out in the answer that respondent, Calcutt, has been prejudiced by the failure

of the complainant, Craddock's, solicitors to apply the $5,000 paid, on the costs of this cause,—this contention is ridiculed as being absurd. The replication, also, contends that it is equally absurd for the defendant, Calcutt, to undertake to settle the question of fees as between complainant and complainant's solicitors. The replication asks that the plea or answer of C. C. Calcutt be overruled and disallowed, and prays that if there be any controverted question of fact necessary to be adjudicated, that a reference may be had to the Clerk of this Court to hear proof and report her findings.

On June 3, 1955, respondent, C. C. Calcutt, filed a rejoinder. The rejoinder asserts that the purported decree which adjudged B. Frank Craddock to be insane is void and of no effect for the reason that he was not tried according to the statutes of Tennessee; but that he was adjudged insane without a trial by jury as required by law, and was represented in the proceeding by the wife who wrongfully and illegally represented him as his guardian ad litem, because she was the petitioner seeking his commitment; and that said B. Frank Craddock was not in fact insane; and that the entire proceeding is void and of no effect; and that if, in fact, said proceedings were, by any chance, regular, the same had been rescinded, voided, set aside and vacated by proper orders of the Court of Gibson County, which entered the original order of insanity by decree entered May 17, 1955, and now before this Court as Exhibit B to B. Frank Craddock's replication. The pertinent portion of said decree relied on by the rejoinder is quoted, as follows:

"It is therefore ordered, adjudged and decreed by the Court that the legal competency of said B. Frank Craddock be, and the same is hereby restored to him as fully and completely as if he had never been ad-

judged to be an insane person, this order to be construed as having the effect of rescinding any and all orders heretofore entered by this Court with reference to the committal of the said B. Frank Craddock.''

The rejoinder asserts that B. Frank Craddock was not an insane person, but in fact, a ''dope addict'', as is shown by a certified copy of the transcript of the record of the District Court of the United States, Western District of Tennessee, filed and marked Exhibit A to this rejoinder. The rejoinder asserts that said B. Frank Craddock did not rely on or plead ''insanity'' in the criminal proceedings before the District Court of the United States in which he was convicted, and that he is now estopped to rely on said claim of insanity.

The rejoinder asserts that said B. Frank Craddock was examined by a psychiatrist at both the federal penitentiary at Leavenworth and at the one in Atlanta while he was an inmate of same, and was found to be sane.

Respondent's rejoinder denies that the release relied upon by him was obtained by fraud; and asserts that same was obtained for a valuable consideration, and that the release now relied on is a separate release from that referred to in the escrow agreement set up in the replication. The rejoinder, also, alleges that in cause No. 6576, Chancery Court of Dyer County, Tennessee, a general creditor's bill was filed against C. C. Calcutt by Rosen Brokerage Co. and others, wherein B. Frank Craddock was made a party, and that on December 1, 1950, a final decree was entered, a copy of which is filed as Exhibit B to this rejoinder. The rejoinder asserts that said decree of December 1, 1950, bars all claims against C. C. Calcutt after that date. The rejoinder offers to present the entire record of said cause in the Chancery Court of

Dyer County, Tennessee, if necessary, but insists that a hearing on any issues raised by these pleadings is improper, and that the Court is compelled to decide this case on the scire facias and the plea thereto.

The rejoinder asserts that respondent was informed by B. Frank Craddock, at the time he executed and delivered said release to respondent, that he had paid both Lloyd S. Adams and Granville Farrar the full amount of their fees in this cause. The rejoinder denies each and every allegation of the replication, and denies that complainant has any right to a reference to the Clerk of the Court of Appeals, or that the complainant has any right except as provided by statute, and that the only right before this Court is to have the issuance of a writ of scire facias and the determination on said "show cause" order and plea thereto, whether C. C. Calcutt is entitled to have his release recorded.

On June 7, 1955, complainant, B. Frank Craddock, filed a sur-rejoinder in this Court. This sur-rejoinder joins issue on Sections 1, 2, 3, 4, 6, and 7 of respondent C. C. Calcutt's rejoinder. The sur-rejoinder, also, asserts that neither in said case of Rosen et al. v. Calcutt, nor in any other proceedings under a general creditor's bill, has he filed a claim or become a voluntary party to such suit. A certified copy of an order sustaining his demurrer to said general creditors' bill and dismissing the cause as to him, is attached to and made part of the sur-rejoinder. He, therefore, alleges that he would not be bound by any proceedings or decree thereunder.

It appears from the pleadings reviewed above that many issues of fact are tendered which will have to be disposed of before the judgment in this cause can be revived; unless this Court determines that such issues of fact are immaterial by reason of the adjudication of

"insanity" against complainant, B. Frank Craddock, or unless this Court shall determine, as contended for by respondent, C. C. Calcutt, that the Court must dispose of the matter now before it on the scire facias and the answer thereto, without considering the replication, rejoinder, and sur-rejoinder.

Before answering either of these questions, we will first dispose of one raised by the Court, itself, viz., whether or not this Court, being a Court of appellate jurisdiction, only, has jurisdiction to hear a matter such as is raised by the pleadings of this procedure.

The jurisdiction of this Court in that regard is not challenged by the respondent, except that respondent does contend that the Court, in the exercise of its jurisdiction, is limited to considering only the scire facias and the plea or answer, thereto. It follows that in answering the question propounded by the Court, itself, an answer will, also, be given to respondent's contention as to the limited extent of this Court's jurisdiction in the matter.

In order that we may approach the problem logically, we must first settle the nature of a writ of scire facias. We quote from some authoritative sources on this subject, as follows:

"A scire facias to revive a judgment is not an original, but a judicial writ, founded on some matter of record, to enforce execution of it; and, properly speaking, is only the continuation of an action,— a step leading to the execution of a judgment already obtained, and enforcing the original demand for which the action was brought." Freeman on Judgments, 5th Ed., par. 1091, page 2266.

"Scire facias to revive a judgment being a continuation of a suit, jurisdiction thereon is in the Court where the judgment was rendered, regardless

of the residence of the parties; Schmidtke v. Miller, 71 Tex. 103, 8 S. W. 638." 2 Bouv. Law Dict., Rawle's Third Revision, p. 3014.

The above quoted definitions of scire facias are in line with decisions of our own Supreme Court in the cases of McIntosh v. Paul, 74 Tenn. 45, and State ex rel. Bonner v. Andrews, 131 Tenn. 554, 580, 175 S. W. 563.

Code, Section 10627 provides that:

"The court of appeals is a court of record, and its judgments, unless superseded, reversed, or modified by the supreme court shall after expiration of thirty days from final decree, as hereinafter defined, be executed by all necessary and proper writs."

With reference to the Supreme Court, Code Section 10637 carried forward from Section 4503 of the Code of 1858, provides:

"The court may appoint receivers, order references and issue all writs and process necessary for the exercise and enforcement of its jurisdiction."

In the case of Newman v. Justices of Scott County, 48 Tenn. 787, the Supreme Court in considering a motion for an alias peremptory mandamus to compel the Justices of the Peace of Scott County to levy and collect a tax for the purpose of satisfying a judgment previously entered in the Supreme Court, said:

"It is suggested for our consideration, whether, as our jurisdiction is only appellate, we can legally enquire into and determine the issue of fact presented. For wise reasons, the Constitution of the State has provided that the jurisdiction of this Court shall be appellate only, under such restrictions and regulations as may, from time to time be prescribed by law. The legislature has enacted no law expressly prescribing restrictions or regulations, governing

the exercise of our jurisdiction in such a case as is now presented.

\* \* \* \* \* \*

"But suppose, in that case, the sheriff had appeared and resisted the motion, on the ground that he had paid over the money, is it a matter to be doubted, that the Court would have power to determine the issue of fact as to the judgment? We think it clear that in a case like that, and in all cases where it becomes necessary, in the exercise of its jurisdiction, to the proper enforcement of the orders, judgments or decrees of the Court, that facts should be ascertained, the Court has the power, as a necessary incident to its organization as a court, and under the provisions of the Code, as to the enforcement of its judgments and the adoption of rules of practice, to have such facts ascertained, either by ordering a jury to be summoned, or by referring the matter to its Clerk for taking proof and making a report, as the circumstances of each case may indicate.

"Being satisfied that we have the power, and that the motion now before us can not be properly determined without an ascertainment of the fact, whether any, and if any, how much, has been paid on the claim of plaintiff, we refer the matter to the Clerk of this Court, with directions to take proof, and report as to the alleged payments, and that he make his report to the present term, if practicable; if not, to the next term, until the coming in of which report the motion is continued." Newman v. Justices of Scott County, 48 Tenn. 787, 789, 791-792.

To the same effect are later decisions of our Supreme Court in the cases of State ex rel. v. Hebert, 127 Tenn. 220, 154 S. W. 957; Carney v. Carney, 138 Tenn. 647, 200

S. W. 517; Chaffin v. Robinson, 187 Tenn. 125, 213 S. W. (2d) 32.

In the light of these decisions, we think there can be no doubt about the jurisdiction of this Court to try any questions, whether of fact or of law, involved in connection with the issuance of the writ of scire facias to revive a judgment, or in connection with any subsequent pleadings with reference thereto. While the scire facias, itself, is but a continuation of the cause already in this Court, and therefore not the exercise of original jurisdiction by this Court, proceedings subsequent to the issuance of the scire facias may be treated as in all respects analogous to the proceedings which would have occurred if, instead of attempting to revive the judgment by scire facias, an original suit had been brought on the judgment in either the Circuit or the Chancery Court. In this connection, it might be argued that, as the judgment of this Court resulted from the reversal by this Court of a decree of the Chancery Court of Dyer County, Tennessee, that the pleadings subsequent to the issuance of the writ of scire facias should be made analogous to pleadings in an equity suit, rather than to those of a case at law, which is the form taken in the instant case. This contention, we think, is not sound, because, even if the judgment had been rendered by the Chancery Court of Dyer County, itself, rather than by this Court reversing the Chancery Court of Dyer County, a suit on that judgment could have been brought in the Circuit Court and the pleadings might then be such as have actually been presented to this Court in the instant case. The contention raised by respondent, C. C. Calcutt, that, although this Court has jurisdiction to revive the judgment by writ of scire facias, the authority of this Court, thereon, is limited to the scire facias, itself, and the plea or answer thereto, is we think,

without merit. Furthermore, our Supreme Court has held that where a scire facias is issued to revive a judgment and the respondent appears and pleads to the merits, he thereby waives all defenses which go, merely in abatement of the writ of action. Bank of West Tennessee v. Marr, 81 Tenn. 108, 112.

We come next to consider the question of whether it is necessary to try, by reference to the Clerk of this Court, the issues of fact tendered by the plea or answer of respondent, and by the replication, rejoinder, and sur-rejoinder. A large number of issues of fact are thus tendered, and unless it be determined that these are immaterial, because of the adjudication of "insanity" against complainant, B. Frank Craddock, it will be necessary to have a reference.

Certified copies of the decrees of the County Court of Gibson County, Tennessee, adjudicating respondent, B. Frank Craddock, to be insane on August 23, 1948, and of the decree of the same Court removing his disability, entered April 18, 1955, are attached to the replication. It thus appears that from August 23, 1948, until April 18, 1955, B. Frank Craddock was laboring under the disability of insanity as adjudicated by the County Court of Gibson County. The release pleaded by respondent, C. C. Calcutt, in his plea or answer to the scire facias was executed during that period.

In the case of Jackson v. Van Dresser, 188 Tenn. 384, 219 S. W. (2d) 896, 898, where there was an adjudication of insanity such as is involved in the instant case, the Supreme Court, speaking through Mr. Justice Tomlinson, said:

"So, there was no adjudication declaring Jessie of sound mind and restoring her to such status at the time she executed the deed that is questioned by this

suit. This fact makes it necessary to determine whether the insanity adjudication of February 9, 1944 is *prima facie* evidence, as insisted by the respondents, or conclusive evidence, as a matter of law, as is insisted by the petitioner, of the insanity of Jessie Miller at the time she executed the challenged deed on June 25, 1947.

"Until the enactment in 1919 of the Insanity Law for State Hospitals (Code Sections 4433-4499), jurisdiction to declare persons of unsound mind and take control of their property was vested in the County Court by an enactment of 1797, Code Sections 9613-9621, and extended to Chancery Court by an Act of 1851, Code Sections 9622-9636. During all this period there was no statutory provision giving any Court jurisdiction to ascertain and judicially declare a restoration to sanity. Possibly, inherent authority to so declare was had, however, by the Court rendering the decree of insanity.

"As a result of the situation just stated, it seems to have been consistently held by our Courts until the enactment of Chapter 102 of the Acts of 1921, Code Sections 9656-9659, that an adjudication of insanity is only *prima facie* evidence of such status when there is called into question a contract made by a person subsequent to the decree adjudging such person a lunatic. Thomasson v. Kercheval, 29 Tenn. 322, 323, 324; Haynes v. Swann, 53 Tenn. 560, 587; McDowell v. Morrell, 73 Tenn. 278, 279, 285.

"The case of Brewer v. Griggs, 10 Tenn. App. 378, 390, decided in 1929 likewise so held. Certiorari was denied. However, the insanity proceedings in that case were *void ab initio*. The case is not to be regarded, therefore, as a precedent in ascertaining

the rule applicable after the enactment of the 1921 Act.

"Some time during the December Term 1920, this Court held in Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S. W. 961, 968, with reference to an insanity adjudication of 1912, that 'contracts made by an insane person after he has been regularly adjudged insane are generally held to be absolutely void'. This statement is likewise not to be regarded as controlling the question we have here. This is because the issue before the Court there was the validity of a contract made by Pritchett prior to the time he was adjudged a lunatic.

"It was with the law in this condition. That the Legislature enacted Chapter 102 of the Acts of 1921. That law provided that a person who had been declared 'a lunatic, or a person of unsound mind, as provided by law, and afterwards become restored in mind' might be declared by the County Court of sound mind and the guardianship, if any, terminated upon petition of the person effected and the submission of evidence satisfactory to the Court, including that of two reputable physicians.

\* \* \* \* \* \*

"In considering the legal effect of the 1921 Act, there is at once suggested the question as to why the law was enacted. The answer seems apparent. As reflected by numerous of our reported decisions, the *prima facie* evidence rule existing at least until the enactment of the 1921 Act was productive of considerable litigation throughout the years and left disturbed and unsettled the quiet assurance of title to property which had been conveyed by persons previously adjudged insane and left doubt as to whether

their contracts would be upheld. Such a situation was and is palpably undesirable. It is reasonable to conclude that the Act was enacted to eliminate that situation, the undesirability of which seems to be clearly portrayed in the case of Wadsworth v. Sharpsteen, 8 N. Y. 388, 59 Am. Dec. 499 and Imhoff v. Witner, 31 Pa. 243, as quoted from the California case of Kellogg v. Cochran, 87 Cal. 192, 25 P. 677, 678, 12 L. R. A. 104, 105. (The California case did not, however, follow those opinions.) The quotation referred to is this: 'It is not necessary to adduce reasons to prove the self-evident proposition that, to admit the capacity of control to exist in the lunatic or habitual drunkard over his estate, after inquisition settling his condition in this respect, or submit it to be controverted by evidence of lucid intervals or sobriety at the moment of contracting, would leave the estates of these unfortunate classes about as much exposed as before proceedings had in regard to them'.

"It further quotes the New York case to this effect: 'If it were otherwise, the proceedings would furnish a very ineffectual security against waste and improvidence. Every transaction would be open to litigation * * *.'

"We are of the opinion that by reason of Chapter 102 of the Acts of 1921, being Sections 9656-9659, an adjudication of insanity is conclusive evidence, as a matter of law, of a continuation of that status until the person adjudged insane has subsequently been declared of sound mind by a decree entered pursuant to the provisions of those Code sections, and that the Chancellor was, therefore, correct in declaring void the deed and deeds of trust in question." Jackson v.

Van Dresser, 188 Tenn. 384, 389-392, 219 S. W. (2d) 896, 898-899.

On the authority of Jackson v. Van Dresser, we must conclude that even if complainant, B. Frank Craddock, executed the release set up as a defense by the plea or answer to the scire facias, same was done during the period of his insanity and that same is, therefore, void. Substitution of the words ''dope addict'' for the words ''habitual drunkard'' in the language quoted with approval from the New York case would not change the significance of the language nor detract from its force, as a reason for the enactment of Chapter 102, Acts of 1921, Code, Sections 9656-9659.

But, it is asserted by the respondent, Calcutt, in his rejoinder to the replication that the order which adjudged B. Frank Craddock insane is void because there was no trial by jury, and that in any event, same was rescinded and held void by the decree of restoration. It is, also, asserted that the decision in Jackson v. Van Dresser has been modified by a distinction raised by the Supreme Court, itself, in the subsequent case of Gibbs v. State, 192 Tenn. 529, 533, 241 S. W. (2d) 556.

█ With reference to the contention that the adjudication of insanity was void because same was not had before a jury, the law is otherwise. Section 4451 of the Code places authority for inquisitions of lunacy, such as that conducted in the case of complainant, B. Frank Craddock, in the hands of the County Judge or Chairman of the County Court. Apparently counsel for respondent assumed that the adjudication was had pursuant to Code, Sections 9613-9621.

█ The County Court in insanity proceedings, under Section 4451, acts as a court of general jurisdiction. Giles v. State, 191 Tenn. 538, 235 S. W. (2d) 24.

■ A trial by jury under this section is not mandatory, unless demanded by the guardian ad litem or the party. Giles v. State, 191 Tenn. 538, 235 S. W. (2d) 24; Bradford v. American National Bank, 25 Tenn. App. 413, 158 S. W. (2d) 366.

■■ In any event, the attack made by respondent in the instant case is a collateral attack on the validity of the lunacy proceedings, and every reasonable presumption will be indulged to support the judgment. Kirk v. Sumner County Bank & Trust Co., 25 Tenn. App. 150, 153 S. W. (2d) 139; McCartney v. Gamble, 184 Tenn. 243, 198 S. W. (2d) 552, 554; Edwards v. Puckett, 196 Tenn. 560, 268 S. W. (2d) 582. If the decree adjudging Craddock insane be not absolutely void, irregularities connected with same are immaterial, because it has been held that such decrees can only be challenged on application of those especially affected, and then only by the court pronouncing the decree or by appeal therefrom to a higher court. Walker v. Graves, 174 Tenn. 336, 125 S. W. (2d) 154; State ex rel. Hooten v. Hooten, 1 Tenn. App. 154, 158; Puckett v. Wynns, 132 Tenn. 513, 522, 178 S. W. 1184.

With reference to the contention that the case of Gibbs v. State, 192 Tenn. 529, 241 S. W. (2d) 556, modified the decision in the case of Jackson v. Van Dresser, supra, an examination of the Gibbs case discloses that the only distinction made was, that the case of Jackson v. Van Dresser applied to the validity of a deed executed prior to restoration of rights, whereas in the Gibbs case, the rule to be followed was that of Bond v. State, 129 Tenn. 75, 165 S. W. 229, which holds that the test in a criminal prosecution is whether the defendant knew the difference between right and wrong and was criminally responsible for his unlawful acts. Instead of modifying the decision in Jackson v. Van Dresser, the opinion in Gibbs v. State

reaffirms same. The principle in the Gibbs case would be against respondent, Calcutt, and in favor of complainant, Craddock, if we had found it necessary to consider the question of estoppel, presented by respondent in connection with the failure of Craddock to raise the defense of insanity in connection with his criminal prosecution in the Federal Court. Our interpretation of the application of the decision in Jackson v. Van Dresser to the facts of this case, however, make consideration of that matter unnecessary.

With reference to the contention that the decree restoring sanity to B. Frank Craddock, itself, made void the former decree adjudicating him insane, we think this contention is without merit. Obviously, the County Court of Gibson County in restoring competency to Craddock did not undertake to validate all transactions in which he had participated during the period of time he had been adjudicated insane. Nor is the language of the order, itself, when properly interpreted, such as to be considered as even undertaking to have this effect. The language in question is ''This order to be construed as having the effect of rescinding any and all orders heretofore entered by this Court with reference to the committal of said B. Frank Craddock.'' On its face this language undertakes to invalidate only the order of committal, and nothing else.

The contention that the rights of complainant, Craddock, in the instant case, were settled by the case of Rosen et al. v. Calcutt et al. No. 6576 of the Chancery Court of Dyer County is, we think, fully met and completely annihilated by the certified copy of the decree of the Chancery Court of Dyer County in the Rosen case, sustaining the demurrer of Craddock to that bill, which

is attached to and made a part of the sur-rejoinder of Craddock in the instant case.

While the sur-rejoinder joins issue on all other issues of fact tendered, as stated above, we find it unnecessary to go into a determination of the truth or falsity of such alleged facts,—same being immaterial because they occurred, if at all, during the period of insanity of Craddock, and are, therefore, under the decision of Jackson v. Van Dresser not binding on Craddock, and consequently are immaterial.

It results that, on the pleadings before us, this Court feels constrained to hold that the judgment against C. C. Calcutt, in favor of B. Frank Craddock, must be revived, subject only to the credit of $5,000 conceded in the motion for writ of scire facias, together with interest from the date of the said judgment, October 4, 1945,—said judgment when so revived to be subject to the same lien for attorneys' fees in favor of B. Frank Craddock's solicitors, Lloyd S. Adams and Granville Farrar, as was provided for in the original judgment. The costs of this proceeding will be adjudged against respondent, C. C. Calcutt.

Avery, P. J. (W.S.), and Carney, J., concur.