KIRK et al. v. SUMNER COUNTY BANK & TRUST CO. et al.—
153 S. W. (2d), 139.

Middle Section.    April 19, 1941.

Petition for Certiorari denied by Supreme Court, June 28, 1941.

Rutherford & Rutherford, of Nashville, for appellants Kirk et al.
Murrey & Murrey, of Gallatin, for appellees Annie Lou Shaw et al.

CROWNOVER, P. J. This cause is not correctly styled, it should be styled Mrs. Annie Lou Shaw et al. v. Sumner County Bank & Trust Company, Administrator, et al., as it was below.

This is a contest between the heirs at law of J. C. Johnson, deceased, and the heirs at law of his wife, Mrs. J. C. (Lizzie) Johnson, deceased.

The original bill in this cause was filed by the heirs of J. C. Johnson, deceased (children by his first wife), to recover funds in the custody of the defendant Bank as administrator of the estate of Mrs. J. C. (Lizzie) Johnson, deceased, who was the widow (second wife) of J. C. Johnson. The heirs at law of Mrs. Lizzie Johnson (her brothers and sisters) were also made defendants to the bill. It was alleged in the bill that J. C. Johnson became insane in January, 1931, and was so adjudged by the County Court and committed to the State Hospital for the Insane and Mrs. Johnson was appointed his guardian; that Mrs. Johnson, without authority of any court, invested $1,000 of her ward's funds in real estate, taking title in her husband and herself as tenants by the entireties; that J. C. Johnson has since died; that Mrs. Johnson, after his death, sold said real estate for $1,000 cash; that Mrs. Johnson has since died and the Sumner County Bank & Trust Company was appointed and qualified as her administrator; and they asked for a decree against said administrator for the proceeds of said real estate on the grounds that the purchase of the real estate with the fund of the ward created a resulting trust

in his favor; that the fund retained its character as personalty; and that they his heirs at law inherit the same.

The defendant heirs of Mrs. Johnson answered and alleged that the inquisition of lunacy of J. C. Johnson was invalid; that he was of sound mind when he purchased the real estate; that it was purchased by him and title taken in the names of himself and wife; and that they as heirs of Mrs. Johnson are entitled to the proceeds of same.

The defendant Kirk answered and pleaded the statute of limitations of eighteen months.

The defendant Bank, administrator, made formal answer, but did not plead the statute of limitations.

The Chancellor found that J. C. Johnson was adjudged insane by due process of law; that Mrs. Johnson invested her ward's funds in real estate without the direction or authority of any court; that Mrs. Johnson converted said funds to the extent of such payment, and said real estate became impressed with a trust to said extent; that the complainants are entitled to recover the amount of same from her estate, as said trust funds being personal property the same passed to the heirs and distributees at law of J. C. Johnson at his death. He entered a decree in favor of the three complainants for one-fourth each of the fund of $1,000, or $250, and ordered that the balance, after payment of expenses of administration, be paid to the heirs and distributees of Mrs. Johnson, the defendants to this suit.

The defendants excepted to said decree and appealed to this court and have assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that the lunacy inquisition was valid.

(2) The Chancellor erred in failing to hold that J. C. Johnson purchased said real estate himself and was of sound mind at the time of the transaction.

The facts necessary to be stated are as follows:

J. C. Johnson, aged seventy-four years, was adjudged insane at a hearing before the County Judge of Sumner County, under Chapter 17 of the Acts of 1919 (Code, secs. 4451-4459), on January 4, 1931, and committed to the Central State Hospital. His wife, Mrs. Lizzie G. Johnson, was appointed and qualified as his guardian.

On May 17, 1931, he was discharged by the hospital, with the statement that he was "unimproved."

On July 20, 1931, J. C. Johnson purchased a house and lot from Goodloe Cockrill for the consideration of $1,300, and took title in the names of himself and his wife.

Mrs. Johnson paid the balance of the purchase price after adjustment of taxes, $1,211.80, out of the funds in her hands as his guardian.

He died on March 17, 1933, and his widow, Mrs. Lizzie G. Johnson, was appointed and qualified as his administratrix.

Mrs. Johnson filed, on March 27, 1933, with the County Court a report as guardian, showing a balance in her hands of $703.90 and on

April 6, 1933, a report as administratrix, showing that the net amount of his personal estate was $2,256.38 (which included the $703.90 which she had held as guardian), and that she had distributed the same, one-fourth to herself and one-fourth to each of his three children.

Mrs. Johnson, on January 18, 1934, sold the house and lot herein involved for $1,000 cash.

She died in May, 1937, and the Sumner County Bank & Trust Company was appointed her administrator, and now has in its custody belonging to her estate the sum of $836.09.

The heirs at law of J. C. Johnson are his three children by a former marriage, Mrs. Annie Lou Shaw, E. W. Johnson, and O. B. Johnson. The heirs at law of Mrs. Lizzie G. Johnson are her two brothers, E. S. Kirk and J. Kirk, and her two sisters, Mrs. Bell Harris and Mrs. Kamiller Hines.

1. The first assignment of error must be overruled, as we are of the opinion that the inquisition of lunacy proceeding is valid.

Proceedings in relation to persons of unsound mind are prescribed by statutes, which must be strictly construed. 32 C. J., 679, sec. 348.

Sections 9613 to 9621 of the Code, giving the County Court jurisdiction to ascertain by jury trial whether a person is insane, to appoint a guardian, etc., have been in force in Tennessee since 1797.

Code, sections 9622 to 9651 (Acts of 1851-52), give the Chancery Court concurrent jurisdiction where the property of the supposed lunatic is of the value of $500 or more.

Chapter 17 of the Acts of 1919 (Code, sections 4451-4459), designated "Insanity Law for the State hospitals," provides for a hearing before the County Judge.

The Supreme Court has held, in Johnson v. Nelms, 171 Tenn., 54 100 S. W. (2d), 648, 651, that this Act of 1919 is an additional remedy for hearing such cases, "a simple, expedient, and inexpensive procedure where little or no doubt exists as to the insanity of the party under investigation," but that the accused in such a case is entitled to demand a jury trial.

The inquisition of lunacy in Johnson's case was instituted under Chapter 17 of the Acts of 1919.

The defendants contend that the proceeding was void for the following reasons: (1) The process was not signed by the clerk, but was blank. Code, sections 4453 and 4454. (2) Five days' notice of the hearing was not given. Code, section 9626. (3) The record does not show that a guardian ad litem was appointed to look after Johnson's interest during the trial. Code, section 4457.

These questions might have been raised in the lunacy proceeding in the County Court, but they could not be raised in a collateral attack upon those proceedings in this suit.

■ This is a collateral attack on the lunacy proceeding, and every reasonable presumption will be indulged to support the judgment. And in the absence of an affirmative showing to the contrary it will be presumed that the court had jurisdiction both of the subject-matter and of the person, and that all facts necessary to give the court jurisdiction to render the particular judgment were found. 34 C. J., 536-539.

■ "Presumptions are indulged in the favor of the validity of the judgment where the record, although failing to show jurisdiction affirmatively, yet does not distinctly show a want of jurisdiction, as where the record of a judgment of a court of general jurisdiction is silent as to the facts conferring jurisdiction, or is defective in consequence of the omission of proper recitals, or the loss or absence of parts of the record." 34 C. J., 540-541, sec. 841.

■ "It will also be presumed that the cause of action had accrued at the time the suit was brought; that the parties were living when the action was commenced, and when the judgment was rendered; that plaintiff was entitled to maintain the action; that there was due service of process; that an appearance by an attorney was authorized; that an attorney was authorized to compromise the suit, or to stipulate for a change of venue; that the judgment was supported by the pleadings and proof; that all matters covered by the judgment were in fact litigated by the parties; that some disposition was made of every defendant in the case; that the judgment was rendered at a regular term of the court; that the necessary conditions existed for holding an adjourned term of court." 34 C. J., 541, sec. 841.

■ "It is also insisted that the county court proceedings referred to, resulting in the adjudication that John Taylor Bible was non compos mentis, and the appointment of a guardian of his person and estate, are absolutely void. We do not think so. The main ground of objection to them is that he had no notice of the proceedings against him, and that no one was appointed therein to represent him. The record from the court recites that he did have notice; and in this collateral attack on the proceedings we will indulge all proper presumption favorable to the regularity of the proceedings of the court, it being a court of record, and having jurisdiction of the person and subject-matter." Bible v. Wisecarver (Tenn. Ch. App.), 50 S. W., 670, 673; Houston Oil Co. v. Bayne (Tex. Civ. App.), 141 S. W., 544, 546; Finch v. Frymire (Tenn. Ch. App.), 36 S. W., 883; 32 C. J., 648, sec. 230.

■ The copy of the commitment of the lunatic to the State Hospital for the Insane was filed by agreement in this case, which appears to be an abstract of the lunacy proceeding in the County Court, and there is no showing that it contained all the record of the proceedings in the County Court. It fails to show whether a guardian ad litem was appointed for the lunatic to make defense for him in that pro-

ceeding. It is silent on the subject, but it does state that the proceeding was had in accordance with the insanity laws for State Hospitals, which is Chapter 17 of the Public Acts of 1919; hence, in the absence of a showing to the contrary, we must presume that a guardian ad litem was appointed, and that the lunatic was notified of the proceeding, as the record shows that he was carried before the County Judge and after a hearing he was committed to the Hospital for the Insane. This assignment of error must be overruled.

2. The second assignment of error, to the effect that the Chancellor erred in failing to hold that Johnson purchased the real estate himself and was of sound mind at the time of the transaction, is not well made and must be overruled for the reason that he was regularly adjudged to be a lunatic, committed to the Insane Asylum, and released while unimproved; and there is no evidence that he was restored to sanity before he attempted to purchase this property.

The Code, secs. 9656-9659, provides for a proceeding whereby one theretofore declared a lunatic is declared to be of sound mind and his guardianship terminated and his property restored to him. And the law will presume that his insanity continued until his restoration to sanity has been established by evidence. Haynes v. Swann, 53 Tenn. (6 Heisk.), 560, 587; Brewer v. Griggs, 10 Tenn. App., 378, 390; Pritchett v. Thomas Plater & Co., 144 Tenn., 406, 232 S. W., 961. But there is no evidence in this record of his restoration to sanity, and his insanity will therefore be presumed to have continued, and the fact that the guardian expended his funds, as shown by her report, in purchasing the property, with his consent, does not make the transaction valid.

As a general rule, a guardian has no power without the direction of a court of chancery to convert the personal estate of his ward into real estate. Singleton v. Love, 38 Tenn. (1 Head), 357, 362; Morris v. Richardson, 30 Tenn. (11 Humph.), 389.

It is the constant rule of courts of equity, to hold land purchased by the guardian with the infant's personal estate to be personal estate. Martin v. Keeton, 29 Tenn. (10 Humph.), 536.

If a guardian purchase with the money of his ward a trust will result to the ward. Caplinger v. Stokes, 19 Tenn. (Meigs), 175.

And on the death of the ward such land descends as personalty. Singleton v. Love, 38 Tenn. (1 Head), 357, 362.

It results that all the assignments of errors must be overruled and the decree of the Chancellor affirmed.

The cause will be remanded to the Chancery Court of Sumner County for distribution of the fund in accordance with the decree of the Chancellor.

The costs of the cause including the costs of the appeal are adjudged against the appellants, for which execution will issue.

Felts and Howell, JJ., concur.