Lester M. FRESHOUR,
Plaintiff-Appellant,

v.

G. V. Freshour AUMACK,
Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section.

Nov. 18, 1977.

Certiorari Denied by Supreme Court
April 10, 1978.

Petition to Rehear Denied by Supreme
Court June 12, 1978.

Denty Cheatham, Cheatham & Palermo, Nashville, for plaintiff-appellant.

Michael R. Lipscomb, Lipscomb & Hardin, Henderson, for defendant-appellee.

MATHERNE, Presiding Judge.

The plaintiff, a ward of the Veterans Administration, sued to establish title in himself to a 21.97 acres of land.

The chancellor held that the plaintiff and his former wife, the defendant, owned the land as equal tenants in common and impressed a lien upon the plaintiff's one-half undivided interest in favor of a judgment for $8,200, which he awarded the defendant for past due and unpaid child-support payments.

On appeal the plaintiff insists that: (1) the fee is in the plaintiff, because the land was purchased with his funds which were sent to the wife from the Veterans Administration while he was mentally incompetent; (2) he should be allowed credit on the child-support arrearage for the amounts paid for child support by the Veterans Administration; and (3) the court should have modified the amount of child support because of changed circumstances.

### I.

At the trial the only testimony presented was that of the plaintiff. The defendant was present but did not testify. The only other evidence consisted of admissions, stipulations and documents made exhibits by the plaintiff. Basically, the facts are not in dispute.

In 1944 the plaintiff was discharged from the Army because of his mental condition, and he began drawing disability benefits from the Veterans Administration. The plaintiff and the defendant were married in 1945.

The chancellor found that by order of the County Court for Hardin County, Tennessee, entered on February 23, 1948, the plaintiff was adjudged incompetent and was admitted to the Veterans Administration Hospital at Murfreesboro, Tennessee. There is no appeal from that finding of the chancellor.

After the finding of incompetency, the Veterans Administration paid to the defendant wife the amounts owing to the plaintiff. The plaintiff was released from the hospital and returned to his family. In 1948 the plaintiff purchased the property in question from his brother. The deed was made to the plaintiff and defendant as tenants by the entirety, and the property was paid for with funds received by the wife from the Veterans Administration. The purchase of the property was handled by the plaintiff with the advise of a third party, Mr. Watson, who suggested to the plaintiff that the deed be made to the plaintiff and his wife.

In September 1953 James Barlow was appointed legal guardian over the plaintiff. Thereafter, the plaintiff's disability checks were sent to the guardian. In 1954 the

plaintiff signed a quitclaim deed conveying his interest in the 21.97 acres to his wife. The plaintiff said that the purpose of this quitclaim deed was to effect a sale to a third party. The transaction seemed to have failed due to the lack of cooperation by the guardian.

The plaintiff and the defendant moved from the State of Tennessee in 1953. The plaintiff's father and brother occupied the 21.97 acres under an agreement with the plaintiff to look after it until he returned to occupy it. The defendant wife never objected to the plaintiff's handling of the property and never asserted that she owned it. The plaintiff's guardian paid the taxes on the property out of the plaintiff's funds until the plaintiff was restored to competency, and since that time the plaintiff has paid the taxes.

In 1962, while the parties were living in Michigan, the plaintiff left the defendant. The defendant and the children of the parties remained in Michigan. The guardian, over the years, paid the plaintiff only a small amount of the disability payments and paid the remainder to the defendant.

The plaintiff has been in and out of hospitals and has moved from state to state. In 1967, while residing in the state of Texas, the plaintiff obtained an order of restoration of sanity from the County Court of Harris County, Texas. The plaintiff then sued for a divorce in the Court of Domestic Relations of Harris County, Texas. The decree of divorce, dated July 8, 1968, found that process was duly served on the defendant and that she had answered but failed to appear at the hearing personally or by her attorney of record. The divorce decree vested custody of the parties' five minor children in the defendant, awarded her the household furniture and a 1960 Chevrolet automobile, and ordered the plaintiff to pay to the defendant $100 per month child support "until the youngest child reaches the age of 18 years." The youngest child was recited to be a girl, born in the year 1960. No mention was made in the divorce decree of the 21.97 acres of land.

On October 3, 1968, an order was entered in the County Court of Hardin County, Tennessee, approving the final accounting of the guardian and terminated the guardianship. The Veterans Administration has since made disability payments to the plaintiff.

The plaintiff made the child support payments until July 1969. At that time, at the request of the wife, the Veterans Administration began paying to her, for the support of the children, a portion of the plaintiff's disability benefits. These payments were as follows: $69.00 per month from July 1, 1969 until July 1, 1970; $76.00 per month thereafter until November 16, 1970; $62.00 per month thereafter until August 22, 1972; $48.00 per month thereafter until April 11, 1974; $32.00 per month thereafter until December 18, 1975; and $19.00 per month thereafter. The plaintiff figures the total amount to be $4,182.15, which figure is not disputed.

The plaintiff returned to Tennessee after the divorce. He has sold timber off the 21.97 acres, bulldozed a part of it and removed a house from the premises. At no time has the defendant objected to these acts, nor has she at any time asserted ownership of the property. The plaintiff now manages the property as his own, visits it on week-ends and pays the taxes.

The defendant, who since the separation has resided in the state of Michigan, has married again and is now Mrs. Aumack.

## II.

█ The plaintiff insists that his wife received his disability payments in trust and that she, therefore, holds the real property purchased with those funds in trust for the benefit of the plaintiff. The plaintiff relies heavily upon the case of *Kirk v. Sumner County Bank & Trust Company* (1941) 25 Tenn.App. 150, 153 S.W.2d 139. In that lawsuit J. C. Johnson, age 74 years, was adjudged insane under the provisions of Chapter 17 of the Acts of 1919. He was committed to Central State Hospital, and his wife was duly appointed and qualified as his guardian. About five months after

his commitment, J. C. Johnson was discharged by the hospital with the statement that he was "unimproved." Two months later J. C. Johnson purchased a house and lot for the consideration of $1,300 and took title in the names of himself and his wife. Without approval by the court, Mrs. Johnson paid for the realty out of funds in her hands as guardian. Mrs. Johnson survived J. C. Johnson and sold the property for $1,000. After her death the heirs of J. C. Johnson filed suit claiming the proceeds from the sale of the real estate on the grounds that the purchase of the real estate with the funds of the ward created a resulting trust in the ward's favor; that the fund retained its character as personalty and passed to them as the heirs at law of the ward. The Court sustained the position of the heirs at law of the ward. The Court held that the fact that the ward consented to the purchase did not make the transaction valid.

The material difference between *Kirk* and the case at bar is that here the wife was not the duly appointed and qualified guardian of the plaintiff at the time she used part of his disability payments to pay for the 21.97 acres of land. We also note that in neither case is there a charge of fraud, misrepresentation or overreaching by the party expending the funds of the ward.

During the period of time that the wife was receiving the plaintiff's disability payments there was in effect paragraph (f) of § 3202, 38 U.S.C.A., which provided as follows:

(f) In the case of any incompetent veteran having no guardian, payment of compensation, pension, or retirement pay may be made in the discretion of the Administrator to the wife of such veteran for the use of the veteran and his dependents.

Paragraph (f) was repealed by Public Law 93–295, Title III, § 301(d), May 31, 1974, 88 Stat. 184.

The wife received the plaintiff's disability payments under the foregoing statute; she did not receive the payments as guardian of the plaintiff. The plaintiff testified that his purpose in buying the 21.97 acres was to have a home. That fact is not disputed. Can it reasonably be argued that payments on a home for the incompetent veteran and his dependents would not be for the "use of the veteran and his dependents"? A fair reading of § 3202, 38 U.S.C.A. establishes that the Administrator could have intervened and brought suit at any time when it appeared that the wife, in the opinion of the Administrator, was not properly executing or had not properly executed the duties of her trust. No such complaint appears in the record before this Court relating to the use of the money paid to the wife of the plaintiff.

We conclude that under the facts of this lawsuit the money was properly expended by the wife for the use and benefit of the veteran and his dependents. The purchase of a home in the name of the incompetent veteran and his wife was not a misuse of the benefits received by the wife for the veteran. Many reasons could be noted which would dictate that title to the home would best be in the name of husband and wife. The wife did not abuse her trust in this respect, and the 21.97 acres were owned by the parties as tenants by the entirety. As result of the divorce the parties now own the land as equal tenants in common. *Youree v. Youree* (1965) 217 Tenn. 53, 394 S.W.2d 869.

### III.

After the appointment of a legal guardian over the plaintiff, the plaintiff signed a quitclaim deed conveying his interest in the 21.97 acres to his wife. We agree with the chancellor that this deed be set aside as null and void. A contract with an insane person by one having knowledge of his incapacity may be set aside as null and void. *Pritchett v. Thomas Plater & Co.* (1920) 144 Tenn. 406, 232 S.W. 961; *Hinton v. Robinson* (1962) 51 Tenn.App. 1, 364 S.W.2d 97.

### IV.

We agree with the plaintiff that under the facts the amount for past due and

unpaid child support should be credited with the payments made to the defendant by the Veterans Administration for the support of the children.

In *Kipping v. Kipping* (1948) 186 Tenn. 247, 209 S.W.2d 27, a divorce decree ordered the father to pay $5,000 as child support over a period of four years at the rate of $1,250 annually. Thereafter, the father joined the United States Army. During the term of his military service, the United States Government paid the former wife $1,761.57 under the Servicemen's Dependence Allowance Act of 1942. Of that sum $384.50 was deducted from the father's pay, and $1,377.27 was contributed by the Government. The Court held that the entire $1,761.57 should be credited on the judgment against the father for the support of his child.

In *Wilson v. Gardner's Estate* (1936) 220 Wis. 493, 264 N.W. 643, a divorced wife of a deceased mentally incompetent veteran sued the veteran's estate for unpaid child support payments totalling $2,451.26. The Court found that the wife had been paid child support payments from the Veterans Administration in the amount of $1,722.76 during the period that the arrearage accrued and credited that amount on the judgment of $2,451.26 awarded to the divorced wife.

It results that the judgment of $8,200 is reduced by $4,182.15 leaving $4,017.85. The payment of $100 per month is reduced to the extent of any amount paid by the Veterans Administration to the mother for child support. The judgment below, so modified, is affirmed.

All assignments of error are accordingly overruled. The judgment of the chancellor as herein modified is affirmed, and the cause is remanded to the Chancery Court of Hardin County, Tennessee, for the enforcement of the judgment. The cost in this Court is adjudged against the plaintiff-appellant for which execution may issue if necessary.

NEARN, J., and INMAN, Special Judge, concur.