**Dawn Deona Dittrich HAMM,
Plaintiff-Appellant,**

v.

**James Ferrell HAMM, individually and as Administrator of the Estates of James E. Hamm and Terry Lynn Hamm; and Lynn Hamm, Larry Hamm, Jerry Hamm, Betty Hamm Tounguette and Laura Willie Hamm, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Dec. 19, 1980.

Certiorari Denied by Supreme Court
April 13, 1981.

Mark Collier, Waverly, Claude Callicott, Nashville, for plaintiff-appellant.

John B. Stark, W. A. Moody, Nashville, for defendants-appellees.

## ABRIDGED OPINION

TODD, Presiding Judge.

The plaintiff filed this suit in Chancery Court to "set aside, vacate, and declare null and void" a divorce decree entered by the

Circuit Court whereby an absolute divorce from plaintiff was granted to Terry Lynn Hamm, now deceased. The Chancellor dismissed the complaint, and plaintiff has appealed.

The Chancellor filed a comprehensive opinion which recites his findings of facts and conclusions in the following excerpts:

... Terry Hamm died subsequent to and because of injuries received in the blast or explosion of a propane railroad car in the city of Waverly sometime in the spring or summer of 1978.

Mrs. Hamm came to Tennessee in July, 1976. On July 20th of that year she came to her grandmother's funeral and then went to live with her aunt in the city of McEwen in Humphreys County, Tennessee. She remained a resident of her aunt's household until April 9, 1977, when she was married to Terry Hamm. After the marriage these two parties moved to the Buchanan Trailer Park in Waverly where they lived together for two or three weeks. . . .

On May 18th Dawn left Tennessee and went to Michigan, leaving most of her clothing and some personal effects at the home of her aunt. On December 2, 1977, Mrs. Hamm returned to McEwen and stayed there until December 17th, 1977, when she once again left and returned to Michigan because of an illness in the family. . . .

On December 19, 1977, Mrs. Hamm was delivered a copy of a divorce complaint and a copy of the summons at her place of residence in the state of Michigan. She acknowledged receipt of these documents, but never made any formal or informal appearance to the Court from which they were delivered.

Mrs. Hamm was born in the state of Michigan. She had a prior marriage and divorce there and was and still is a registered voter in the state of Michigan. . . . She recalls talking to Terry Hamm over the phone on one occasion when she was living in Michigan. She acknowledges that they had a discussion about a divorce and that in the fall or summer of 1977 Terry Hamm told her he was going to file an action of divorce against her.

In January, Mrs. Hamm had an inquiry made at the Clerk's office about when the divorce would be heard and she understood it would occur sometime in April 1978. She contends that she had no knowledge that the divorce was ever granted until after the death of her husband and she received a copy of the divorce decree procured for her by her aunt.

The record of the divorce case reveals that the divorce was filed on July 8, 1977, and that a judgment was taken thereon on February 8, 1978. The Judge's notes reflect that a default judgment was granted on February 8th but one was never entered in this cause. On December 2, 1977, a summons and a copy of the divorce complaint were sent by certified mail to Mrs. Hamm in Michigan. Personal service was never had upon Mrs. Hamm nor is there any evidenced that any summons was ever placed in the hands of the Sheriff for an attempt to make a service upon her. A non-resident notice was run in July and August, 1977, but no copy of the order of publication or a copy of the publication was ever mailed to Mrs. Hamm. The divorce complaint does not ask for publication nor is there any affidavit in the file stating Mrs. Hamm is or was a nonresident or praying that process by publication issue to her.

The defense offered two witnesses, Clint Jones and Gary Phelps, who said they knew Mrs. Hamm. Mr. Jones stated he had a date with her sometime around Christmas 1977 at the time that Mrs. Hamm said she was divorced. He stated that he remembered seeing her a week or two after the explosion, at which time Mrs. Hamm said she would not sue the railroad because she and Terry were not married or possibly she said that she and Terry were divorced. Mr. Phelps remembered that Mrs. Hamm had made some statement about celebrating being free.

. . . .

It is the Court's opinion that the issue is two-fold: (1) Was there fraud perpetrated upon the original Defendant in the divorce action and the Complainant in this cause and; (2) Without fraud being shown may a divorce be set aside where one of the parties is deceased

. . . .

... Mrs. Hamm received the copy of this divorce action and signed a receipt therefore. Someone in Mrs. Hamm's family contacted an attorney after seeing the matter publicized in the newspaper; and Mrs. Hamm had returned to Humphreys County before the divorce action was heard. From all of this we may only conclude that she had notice of the divorce action and that she had ample opportunity to present herself in person or by counsel to the Court which granted the final decree of divorce by and between Mr. and Mrs. Hamm.

. . . .

At the time this divorce was granted in the Circuit Court for Humphreys County there was no mention of any property being divested from the Complainant herein to the husband who obtained the divorce in Circuit Court. The decree of the Circuit Court, in its last paragraph, states:

"The Defendant, upon leaving the Plaintiff having taken her personal property, and the parties not owning any joint property, the court need not make a division of property."

The complaint in this Chancery action states that Terry Lynn Hamm died intestate on March 15, 1978. The complaint then further outlines the rights which Dawn Hamm would have in the estate of Terry Lynn Hamm, if in fact they were married. These rights would include an interest in the wrongful death action brought for the benefit of Terry Lynn Hamm's estate and also the rights and interest Terry Lynn Hamm took upon the deaths of his brother and sister.

These property rights, i. e. wrongful death actions, were not present at the time the divorce was granted by and be-

tween Terry Hamm and Dawn Hamm in the Circuit Court for Humphreys County. This Court is of the opinion that there were no property rights at issue at the time the divorce was granted. Property rights which arise in either party after the decree of divorce are not such property rights as would give the Court the right to set aside a divorce decree in order to do equity to the parties. The purpose of allowing the setting aside of a divorce decree after death of one of the parties when there are property rights at issue is to prevent an unequal or unfair division of the property rights by the divorce decree when one of the parties did have ample opportunity to be represented or heard at that cause.

Considering all of the above it is this Court's opinion that the action brought by Dawn Deona Dittrich Hamm should be dismissed.

In addition to the matters mentioned in the Chancellor's opinion, the record contains a letter written by plaintiff to the deceased, Terry Hamm, on September 28, 1977, containing the following: "Did you file for the Divorce? Sure would like to know when it is final."

On appeal, the plaintiff-appellant has presented 12 issues, of which the first 5 are as follows:

1. Was the publication void and was the subsequent divorce decree therefore void because the Circuit Court had no jurisdiction of the defendant therein for any one or any combination of the following facts:

(a) The complaint duly sworn to and never amended alleged that the defendant was a resident of McEwen in Humphreys County, Tennessee and there was no separate affidavit filed establishing non residency of the defendant and there was no return of an officer on any process establishing non residency of the defendant, the publication being wholly unauthorized by and contrary to T.C.A. § 21–212.

(b) The Circuit Court Clerk did not "enter upon the rule docket an order re-

quiring the defendant to appear at a certain day therein named, being a rule day, and defend, or otherwise the bill will be taken for confessed", as required by T.C.A. § 21–213.

(c) Publication was made on July 20, 27, and August 6, 13, 1977. The Circuit Court Clerk did not send to the defendant therein by registered mail or certified mail either a copy of the complaint or a copy of the newspaper clipping containing the publication until December 16, 1977, at that time the Clerk did mail to the defendant therein a copy of the complaint. The publication notice required the defendant to appear and file her answer "on or before thirty (30) days from the date of the last publication." The Clerk waited five months lacking four days before mailing the defendant therein a copy of the complaint. This was not timely notice nor is it in compliance with T.C.A. § 21–218.

2. Was the publication void and was the subsequent divorce decree void because the deft. in said case, plaintiff herein, was not a non resident of the State of Tennessee at the time publication was made or at the time publication was made and also at the time copy of the complaint was mailed to said defendant by the Circuit Court Clerk, since T.C.A. § 21–212 provides that "personal service of process on the defendant in the Court of Chancery, is dispensed with in the following cases: (1) When the defendant is a non resident of this state"?

3. Is the plaintiff herein barred from maintaining this suit for failure to enter her appearance in the divorce case, assert her defenses therein and contest the suit, after receiving information, but no legal notice, that the suit was pending?

4. Was the plaintiff herein guilty of acts alleged to constitute unclean hands and if so did such acts legally bar her from maintaining this suit under the doctrine of unclean hands?

5. Was the plaintiff herein guilty of acts alleged to create an estoppel and if so did such acts legally estop her from maintaining this suit?

Unquestionably, if this were an appeal from the divorce decree, the defects mentioned in the first issue would be fatal to the decree. However, two factors militate against the fatal effect in the present case.

First, in order to invalidate a judgment or decree in a separate action such as this, it is necessary to affirmatively show the fatal defects. That is to say, in this separate action, it is not sufficient to present the complaint and point out defects; it is necessary to show affirmatively that such defects were never corrected or cured by subsequent action. It is not sufficient to present a summons which bears no return: it is necessary to show affirmatively that nothing occurred which would bring the defendant before the Court otherwise. The record does not contain such affirmative showing of defects as to invalidate the divorce decree.

In a separate action to invalidate a final judgment, there is a presumption of the validity of judicial proceedings. *Kirk v. Sumner County Bank & Trust Co.*, 25 Tenn. App. 150, 153 S.W.2d 139 (1941). The evidence in the present case does not overcome that presumption.

Secondly, there are other facts in the record which show knowledge, acquiescence or other elements of waiver and estoppel which would deny the relief sought in the present case.

The complaint shows on its face that appellant received certified mail notice of the divorce proceeding on December 19, 1977; and that appellant was actually present in Humphreys County on February 7, 1978, the date of the divorce hearing which resulted in the entry of the divorce decree on February 8, 1978.

The evidence shows that, after the divorce decree, appellant celebrated "being free."

There is no evidence that appellant took any steps to set aside the decree and/or obtain a new hearing prior to the death of Terry Hamm on March 15, 1978.

This action was filed on September 29, 1978.

■ This Court agrees with the Chancellor that appellant's full knowledge of the proceedings and failure to assert her rights therein have effectively estopped her from obtaining the relief sought in this case. That is, if appellant was unwilling to seek to preserve her marriage while her husband was alive and could require her to perform her marital duties, after the termination of her marital duties by his death, she is estopped to try to resurrect the bones of the marriage for her financial benefit free of any corresponding duty or obligation on her part.

The first five (5) issues are deemed to be without merit.

The sixth and seventh issues tendered by appellant are as follows:

6. Did the Chancellor err in holding that one of what he termed two principal issues was whether Terry Hamm, plaintiff in the divorce case was guilty of extrinsic fraud, that is, such fraud as prevented the defendant in said case from asserting her defenses therein and then holding that the said plaintiff in said case was not guilty of extrinsic fraud and therefore the decree should not be set aside? ...

7. Did the Chancellor err in holding that the other of the two principal issues was "without fraud being shown may a divorce be set aside where one of the parties is deceased," in accepting as true and binding on the plaintiff herein that sentence in the divorce decree which reads "The defendant, upon leaving the plaintiff having taken her personal property, and the parties not owning any joint property, need not make a division of property," in further holding, "That there were no property rights at issue at the time the divorce was granted and especially in holding: 'property rights which arise in either party after the decree of divorce are not such property rights as would give the court the right to set aside a divorce decree in order to do equality to the parties....,'"

This Court does not fully agree with the reasoning of the Chancellor that appellant has no standing to bring this suit after the death of her former husband because no property rights are involved. Because of the peculiar nature of the Wrongful Death Statute, it might be held that that statute creates a property right retroactively so to speak, such as to create or grant standing to a survivor to bring such a suit as this. However, it is not considered necessary to resolve this issue because the appeal is being disposed of on other grounds.

The eighth issue is moot.

The ninth issue is as follows:

9. Did the Chancellor err in admitting in evidence over plaintiff's objection the testimony of Clint Jones to the effect that he had intercourse with the plaintiff on Sunday, the next day after there had been a Christmas party at his home on the Saturday right before Christmas in 1977 and in overruling plaintiff's motion to exclude all of that testimony on that subject?

■ To the extent that the testimony in question showed knowledge of the pending proceedings, the objection should have been overruled. To the extent that such testimony was immaterial to any issue in this case, the objection should have been sustained. However, on appeal from a non jury judgment, erroneous rulings upon the admissibility of evidence in the Trial Court will not result in a reversal unless a correct ruling in the appellate court so changes the evidence as to justify a reversal on the merits. *Berke v. Chattanooga Bar Assn.*, 58 Tenn. App. 636, 436 S.W.2d 296 (1968).

■ Upon consideration of the record de novo with inadmissible evidence excluded, this Court is satisfied to affirm the conclusion of the Chancellor.

The tenth, eleventh and twelfth issues are rejected on the reasoning cited in rejecting the ninth issue, above.

■ The single determinative issue on this appeal is as follows:

Where a divorce decree is pronounced upon defective publication procedure, but the defendant has actual knowledge of

**372**

the proceeding and opportunity to litigate the suit and fails to do so, may the defendant wait until the marriage has been terminated by the death of the plaintiff and thereafter seek to invalidate the divorce in order to participate in a claim for wrongful death of the plaintiff?

This Court agrees with the Chancellor that, under the facts of this case the proper answer to this issue is "No."

The decree of the Chancellor is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Chancery Court for the collection of costs and any other necessary proceedings.

Affirmed and remanded.

THOMAS A. SHRIVER and T. MACK BLACKBURN, Special Judges, concur.