**CITY OF JOHNSON CITY**

v.

**Pete and Ben PADUCH.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Sept. 21, 2006 Session.

Nov. 16, 2006.

Permission to Appeal Denied by
Supreme Court March 12, 2007.

Thomas C. Jessee, Johnson City, Tennessee, for the Appellants, Pete and Ben Paduch.

Kent Erickson Herrin, Johnson City, Tennessee, for the Appellee, City of Johnson City.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Pete and Ben Paduch constructed a 15,000–square–foot addition and, later, a 5,000–square–foot addition, to a building they co-own in Johnson City, Tennessee. The City issued both of the Paduchs a citation for violating a city ordinance by failing to obtain a building permit before constructing the 5,000–square–foot addition. Because of the increased size of the building after the construction of the 15,000–square–foot addition, the building became subject to building code requirements for the installation of a fire control device, such as a sprinkler system throughout the building or a fire wall. The City denied Pete Paduch's request that the Pauduchs be granted a variance with regard to installation of such a device and, thereafter, the city court, by substitute judge, fined each of the Paduchs fifty dollars for failing to obtain a building permit and ruled that the Paduchs be fined fifty dollars per day until they complied with the building code requirement that a fire control device be installed in the building. The Paduchs appealed the ruling to circuit court. The circuit court accepted the Paduchs' guilty plea to the charges that they constructed the 5,000–square–foot addition without a building permit and ordered that each pay a fifty dollar fine. The circuit court further ordered that the Paduchs pay retroactive and prospective fines of fifty dollars per day because of their failure to install a fire control device as required by the building code. On appeal, the Paduchs argue numerous issues: that the substitute city court judge was not appointed in accordance with the city charter; that the city court, and therefore the circuit court, erred by assessing fines in excess of fifty dollars; that the circuit

court erred in failing to find that the charges against Pete Paduch were barred under the statute of limitations; that the circuit court erred by requiring that the Paduchs affirmatively modify their building; that the evidence preponderated in favor of waiving the ordinance requirement regarding the installation of a fire control device; and that the circuit court abused its discretion by taxing them with discretionary costs. We find no merit in any of these arguments and affirm the judgment of the circuit court. We further deny the City's request for damages upon grounds that this was a frivolous appeal.

## I. Background

Pete Paduch, the former mayor of Johnson City, Tennessee, and Ben Paduch, his brother, own the Hometech Industries building ("the Hometech building"), which is located in Johnson City and which houses the Paduchs' tub manufacturing business. In the summer of 1998, Pete Paduch applied to the city building department for a permit for a 15,000–square–foot addition to the extant 24,000–square–foot building. He was advised that under the building code adopted by City ordinance, his plan to increase the size of the building would require the installation of a sprinkler system or other fire control device, such as a fire wall. Pete Paduch was disinclined to install such a device and appeared before the City's board of building codes to request that he be granted a variance because he only planned to use the addition to store noncombustible metal and to provide his employees with protection in inclement weather. The board denied his request, but indicated that as an alternative, he could maintain compliance with the building code and avoid the necessity of installing the fire control device by constructing a building of 11,250 square feet separated from the original building by ten feet.

Thereafter, although Pete Paduch was issued a permit for the construction of an 11,250–square–foot addition to the Hometech building, a 15,000–square–foot addition was constructed instead. As constructed, the addition was separated from the original structure by ten feet, and, initially, the city attorney opined that it was a "separate building" as defined by the 1997 Standard Building Code. However, in May of 1999, Steve Shell, the city fire marshal and chief building official, inspected the Hometech building and observed that the ten foot separation between the addition and the original structure had been filled in, and the addition was now joined to the original structure, resulting in a single 39,000–square–foot building which was subject to the building code requirement of a full automatic sprinkler system throughout the building or proper fire separation, such as a fire wall, between the original building and the addition. In March of 2000, the state fire marshal's office also determined that, pursuant to the Southern Building Code, a sprinkler system was required in the 15,000–square–foot addition.

In April of 2002, Mr. Shell advised Pete Paduch that the City had still received no plans for the 15,000–square–foot addition, as was required for issuance of a building permit. Pete Paduch referred Mr. Shell to Ben Paduch, and also told him that Ben Paduch was in the process of adding a loading dock to the Hometech building. The next day, Mr. Shell spoke with Ben Paduch, who confirmed that he was adding a 5,000–square–foot loading dock to the Hometech building. Because no plans had been presented and no permit had been issued as to this dock, Mr. Shell requested that construction of the dock be discontinued. Ben Paduch refused this request, and a stop work order was issued. However, the stop work order was ignored, and

construction of the dock continued to completion.

In August of 2002, the Paduchs were each issued a citation for failing to obtain a valid building permit. The case was tried before attorney Roger Day, who was appointed to serve as substitute city judge after the sitting judge recused himself. The city court found both of the Paduchs guilty of violating the city ordinance which required that they obtain a building permit before beginning construction and ordered each to pay a fine of fifty dollars, plus court costs. The court also found that the Hometech building was not in compliance with the building code because of the absence of a required fire control device. The city court's order further provided as follows:

The Court finds and holds that the two (2) additions onto the Hometech Industries building located at 2507 Plymouth Road are not in compliance with the City's Ordinance and the Southern Building Code. Mr. Pete Paduch ... and Mr. Ben Paduch ... are each given sixty (60) days from the entry of this Order to bring the 15,000 square foot addition and the 5,000 square foot addition, respectively, into compliance with the Southern Building Code as adopted by the Johnson City City Commission. Although the Court is sympathetic to the argument that the 15,000 square foot addition didn't need sprinklers or other fire control devices, the Standard Building Code, as adopted, was enacted to insure uniformity in building construction and to further benefit the health, safety and welfare of the general population. It must be followed.

Should Mr. Pete Paduch and Mr. Ben Paduch bring the aforementioned additions up to City Code within the sixty (60) day period set out herein and obtain the building permit as required, the Court will waive the Fifty ($50.00) Dollar fine imposed herein. If Mr. Pete Paduch and Mr. Ben Paduch otherwise refuse or fail to bring the aforementioned 15,000 and 5,000 square foot additions, respectively, into compliance with the building code and obtain a building permit, then commencing on the sixty first (61st) day after entry of this Order, Mr. Pete Paduch and Mr. Ben Paduch shall each be fined Fifty ($50.00) Dollars for each day that the additions are not in compliance with the Building Code. These fines shall continue until the additions are brought up to the Building Code standards and Building Permits obtained.....

The Paduchs appealed this order to the Washington County Circuit Court, and the matter came on for trial on November 23 and 24, 2004. During the course of trial, confusion arose as to whether the citations issued against the Paduchs in August 2002 pertained to their failure to obtain building permits for both the 15,000–square–foot addition and the 5,000–square–foot loading dock addition, as this was not apparent on the face of the citations. This confusion was dispelled by Mr. Shell, who testified that the citations issued against the Paduchs charged them only with failure to obtain a building permit for the construction for the 5,000–square–foot loading dock as co-owners of same. At the close of the City's proof, the Paduchs pled guilty to this charge, and on December 9, 2004, the trial court entered its order and incorporated memorandum opinion which we are compelled to quote at length as follows:

The Court will find that both Mr. Ben Paduch and Mr. Pete Paduch are guilty of a violation of City Code not acquiring a permit for the 5,000 square foot loading dock that was constructed. As co-owners of the property I think only one fine is appropriate and I find it's $50.00.

That fine, of course, is punitive in nature. In determining the rest of what the Court finds is proper in this case, the Court does have to go back and consider, I think, the entire situation arising initially from the construction of the 15,000 square foot addition. What we know is back in 1998 the City issued a permit upon Mr. Pete Paduch's request for the Paduchs to construct an addition of 11,250 square feet to the rear of their original building, which building would have a 10 foot separation, basically, from the original building with a canopy overhead. That was constructed by the Paduchs. However, in violation of the permit that they did obtain, subsequently the Paduchs enclosed that 10 feet separation, in effect making one building, which they had no authority to do. They were not issued a citation for that. Sometime after that, the City discovered combustible material in that addition which would be in violation of the permit that they were issued. No citation was issued for that. Subsequent to that the Paduchs apparently poured concrete for the floor, which had originally been stated by Mr. Pete Paduch to have been a gravel floor in obtaining the permit. They concreted that back floor, again without obtaining a permit and in violation of the existing permit they had, and then lastly, for which they pled guilty, they built a 5,000 square foot loading dock without even applying for a permit.

This defiance of what basically the law and the City Code requires, in this Court's opinion is reflective of some arrogance on the part of the Paduchs in feeling that for some reason they don't have to obey the law, and I really find that attitude to be somewhat reprehensible.

Citations were issued on August 2—excuse me—August 9, 2002 for the Pa-

duchs' failure to get the permit on the 5,000 square foot enclosed loading dock. The case was tried before substitute Judge Day and he issued an Opinion on November 6, 2003, as I recall, giving the Paduchs 60 days to come into compliance with the Code and fined them, I believe, $50.00 per day until the building was brought into compliance, which fine could be purged by their compliance. The Paduchs promptly filed an appeal and this case was set for trial on September 27, 2004, of this year. To this Court's knowledge there's been no steps taken by the Paduchs to comply with code requirements since Judge Day's decision. It's clear that to comply they're either going to have to separate the original building and the 15,000 square foot addition they built on by taking off the sides and possibly replacing whatever is the roofing material at this time with something of a canopy nature, or they can possibly install a fire wall between the buildings. There may be some possibility of a water curtain, whatever that is, or they can sprinkle the entire structure, including the loading dock. That's my understanding of what will bring the Paduchs into compliance.

This case as far as the City was concerned and as far as the Court was concerned was ready to be tried on September 27th, and had been set on that day for months, probably six months. The case was continued at the request of the Defendants.

The Court is going to fine the Paduchs $50.00 per day from September 27 to the initiation of this trial. The Court is going to order the Paduchs to come into compliance with the Code. The Court will allow the Paduchs until February 1, 2005, to come into compliance with the Code requirements, and will fine them

$50.00 per day from today until they come into compliance, which the Court considers that fine not to be punitive, but to be coercive and of a remedial nature, which fine from today forward the Court will consider suspending and setting aside should the Paduchs comply with the Code by February 1, 2005. The fine from September 27 until the initiation of this trial yesterday will remain in effect. The Court will leave this matter open for any further proceedings that are necessary should the remediation effort, at least in the City's view, not have been satisfied. If the remediation effort satisfies the City, then simply give me an Order dismissing the case at that point in time and taxing the Paduchs with the costs. If not, file a Motion to have the Paduchs show cause why they're not in contempt and the Court will consider further action, including incarceration.

After a hearing on February 16, 2005, the circuit court imposed an accumulated remedial fine on the Paduchs of $50 per day from December 9, 2004, until February 15, 2005, for a total remedial fine of $3,400 and ordered that "the remedial and coercive fine of $50.00 per day shall continue until the day this Court concludes and identifies the date the defendants' building is brought into compliance with the City's building codes and ordinances." The record shows that the Paduchs achieved compliance with the City's building code on February 21, 2005.

A subsequent order of the circuit court filed June 10, 2005, *inter alia,* awarded the City $1,589.60 in discretionary costs, and eliminated the $50 per day punitive fine which the court had previously imposed on the Paduchs for the period from September 27, 2004, through November 23, 2004. Later, the City was awarded additional discretionary costs by order of May 26, 2006.

The Paduchs now appeal.

## II.  Issues

The following issues are presented for our review:

1) Whether the city court, and, therefore, the circuit court, lacked jurisdiction to hear this case because the substitute city judge was not appointed in accordance with requirements set forth in the city charter.

2) Whether the city court, and therefore the circuit court, exceeded its jurisdictional limit by assessing fines in excess of $50 for each defendant.

3) Whether the city court, and therefore the circuit court, erred in finding that the charges against Pete Paduch were not barred by the statute of limitations.

4) Whether the city court, and therefore the circuit court, erred in requiring the Paduchs to modify the Hometech building.

5) Whether the evidence preponderated in favor of waiving the ordinance requirement that a fire control device be installed in the 15,000–square–foot addition to the Hometech building.

6) Whether the circuit court abused its discretion by taxing discretionary costs against the Paduchs.

7) Whether the City should be awarded costs and expenses upon grounds that this is a frivolous appeal.

## III.  Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide*

*Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn.1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

### IV. Appointment of Substitute Judge

The first issue we address is whether the city court, and therefore the circuit court, lacked jurisdiction to hear this case because the substitute judge appointed to hear the case in city court was not appointed in accordance with the city charter.

As noted, the regular city judge recused himself, and attorney Roger Day was appointed substitute judge. The Paduchs assert that the city charter specifically requires that in the event a special judge must be appointed, that person shall have the same qualifications as the sitting judge. The Paduchs further assert that despite the charter requirement that the city judge reside in the city continuously for two years prior to his election or appointment, Mr. Day was not a resident of the city at the time of his appointment, but was, instead, a resident of Carter County. The Paduchs also note that the charter provides that if the city judge's position is vacant in the event of an absence, incompetency, or other disability, the city recorder shall sit as judge. The Paduchs argue that because of the City's failure to properly appoint the substitute judge, this matter should be remanded to the city court for proper appointment of a judge in accordance with requirements of the char-

ter. Alternatively, the Paduchs argue that this case should be dismissed as time barred because the City's failure to properly appoint a judge resulted in the case not being prosecuted within the time allowed under the applicable statute of limitations.

We do not agree that the City's failure to follow the charter requirements in appointing Mr. Day substitute judge warrants the remedy requested. We are guided to this conclusion by the Tennessee Supreme Court's decision in *State ex rel. Newsom v. Biggers,* 911 S.W.2d 715 (Tenn. 1995). In that case, the defendant petitioned the circuit court for a writ of *habeas corpus* upon grounds that the municipal court judge who accepted his guilty plea and imposed his sentence was not elected to an eight-year term of office as required under the state constitution. The Supreme Court ruled that despite the irregularity in his appointment, the judge had acted in a *de facto* capacity, and therefore, his actions were valid:

> A judge *de jure* is "one who is exercising the office of a judge as a matter of right": that is, one legally appointed and qualified to exercise the office. 48A C.J.S. *Judges* § 2 (1981). A judge *de facto* is "one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes." *Id.* "An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person elected or appointed by authority of such statute is a *de facto* judge." *Id.* "A judge who actively assumes the duties of his office after he has been appointed by the governor of the state, or has been elected by the people, is at least a *de facto* judge even though facts aliunde might disclose irregularities in the appointment or the election." *Id.* "[A] judge *de facto* is a judge *de jure* as to all parties except the

state, and ... his official acts ... are binding on third persons and the public." *Id.* at § 11.

These principles have long been recognized in Tennessee jurisprudence. In *Waters v. State ex rel. Schmutzer,* a legislative act provided that the county executive serve a four-term and also perform the duties of county (i.e. juvenile court) judge. 583 S.W.2d 756 (Tenn.1979). The minimum age for county judge was twenty-five years. These provisions in the legislature conflicted with the constitutional provisions of Article VI, Section 4, requiring that judges of inferior courts must be elected to a term of eight years and setting the minimum age for judges of inferior courts at thirty years *Id.* at 758. This Court held that the legislature's attempt to vest the judicial authority of the juvenile court in the county executive was invalid. However, while the person elected to that position was not a *de jure* judge, he was a *de facto* judge, and his acts while serving were valid. *Id.* at 761.

> The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with good faith belief in his right to exercise such authority, invoked and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer.

*Martin v. Dowling,* 204 Tenn. 34, 315 S.W.2d 397, 399 (Tenn.1958); *see also Giles v. State ex rel. Giles,* 191 Tenn. 538, 235 S.W.2d 24 (1950); *Beaver v. Hall,* 142 Tenn. 416, 217 S.W. 649 (1920).

> A person inducted into an office according to the forms of law is an officer *de facto,* although incompetent by the provisions of the constitution to hold the office, and his competency

cannot be enquired into by the parties affected by his acts.... [H]is official acts [are] valid and binding, until he is removed in the manner prescribed by law.

*City of Nashville v. Thompson,* 80 Tenn. 344, 347–350 (1883); *see also Turney v. Dibrell,* 62 Tenn. 235 (1873); *Blackburn v. State,* 40 Tenn. (3 Head) 690 (1859); *Venable & Co. v. Curd,* 39 Tenn. (2 Head) 582 (1859). The rationale underlying these cases is that it would subvert the ends of justice to invalidate the acts of a judge who presided over the cases with the consent of the parties.

*State ex rel. Newsom,* 911 S.W.2d at 718. *See also Ferrell v. Cigna Property & Casualty Ins. Co.,* 33 S.W.3d 731 (Tenn.2000).

▇ It is not disputed that the charter was not followed in the appointment of the substitute judge in the instant matter; however, it appears from the following statements made by the Paduchs' attorney, Thomas Jessee, at the beginning of the city court hearing that the Paduchs waived objection to Mr. Day sitting as substitute judge despite the deficiencies of his appointment, except to the extent the court's jurisdiction was affected:

> ... I had stated this each time we've been over here trying to find a Judge, but we haven't had a record. I have no objection but I want on the record, to Your Honor hearing this case but I point out to everyone that if a Court on appeal says that the residency requirement is somehow jurisdictional in nature, I also have no ability to waive jurisdiction. So, I just wanted it noted on the record that *we have no objection, Your Honor, to you hearing this case but we are not waiving any jurisdictional issues because I don't think I can waive jurisdiction* and if some court up the road says that the residency requirement is juris-

dictional, then of course, we've so noted it.

(Emphasis added.)

We construe the above statement to have been a waiver of all objections to the appointment of Mr. Day as substitute judge to the extent that such appointment did not compromise the subject matter jurisdiction of the court. As Mr. Jessee correctly indicated in his statement to the court, such jurisdiction may not be waived. *See Mid–South Pavers, Inc. v. Arnco Construction, Inc.,* 771 S.W.2d 420, 423 (Tenn. Ct.App.1989) ("Personal jurisdiction may be waived; subject matter jurisdiction may not.") We do not find that the court's subject matter jurisdiction was affected by the appointment procedure followed in this case, and the Paduchs present no authority to the contrary. Because the substitute judge was a *de facto* judge, all of his actions were valid, and we find no basis for remanding the case to the city court for appointment of another judge as requested by the Paduchs. For the same reason, the Paduchs' alternative argument that the case should be dismissed because the failure to appoint the judge in accord with charter requirements resulted in an untimely prosecution is also without merit— the actions of the substitute judge were at all times valid, and therefore, the deficiencies in his appointment did not result in a failure to timely prosecute the case. Furthermore, as discussed below, we do not agree that Tenn.Code Ann. § 40–2–102, the statute of limitations cited by the Paduchs in support of this argument, is applicable. For all of these reasons, the Paduchs' request that this case be remanded or dismissed on the basis that the substitute judge was not properly appointed is denied.

## V. Limitations on Fines

The second issue we address is whether the city court, and therefore the circuit court, exceeded its jurisdictional limit by assessing fines in excess of $50 for each of the Paduchs. The Paduchs complain that, after fining them each $50 for one count of violating the ordinance, the city court imposed a continuing fine of $50 per day for each day that the additions were not in compliance with the city code. The Paduchs argue that the city court did not have authority to impose a total fine in excess of $50. They cite the Tennessee Supreme Court's opinion in *Town of Nolensville v. King,* 151 S.W.3d 427 (Tenn. 2004) as supporting authority for this argument and assert that in that case, the Court "specifically held that the city court is limited to imposing a fine of $50.00 unless the fine would be assessed by a jury which was not available at the City Court level." The Paduchs further note that "[n]o written waiver of a jury was entered in this matter and the Paduchs throughout the entire process specifically objected to any fines greater than $50.00."

We disagree that the Paduchs' argument is supported by *Town of Nolensville.* In that case, the appellant was cited for violating a city ordinance which prohibited the accumulation of debris and inoperative vehicles on city property. Initially, the appellant was fined fifty dollars for violating the ordinance, but when the offending items had still not been removed after issuance of another citation and two more hearings before the city judge, the appellant was found to be in continuing violation of the ordinance and was fined $300 per day for each day he had been in violation for a total fine of $18,600. The appellant argued that this fine violated Article VI, section 14 of the Tennessee Constitution which provides:

No fine shall be laid on any citizen of this state that shall exceed fifty dollars, unless it shall be assessed by a jury of

his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

The Court of Appeals held that the initial assessment of the fine in municipal court did not violate this section of the constitution because the appellant had the right to a *de novo* appeal and jury trial in circuit court. The Supreme Court disagreed with the Court of Appeals' characterization of the municipal court as being part of a two-tier proceeding in which the *de novo* appeal and jury trial in circuit court "effectively wiped the slate clean of the lower court's judgment and afforded the appellant the full panoply of constitutional rights." *Id.* at 431. Instead, the Court held that, irrespective of these rights afforded in circuit court, a municipal court judge is constitutionally prohibited from imposing fines in excess of $50 for the violation of a municipal ordinance. However, the Supreme Court did not, based upon this holding, reduce the fine against the appellant to a total of $50. The Court stated that "[b]ecause the ordinance at issue prescribes that each day in violation constitutes a separate offense, the appropriate fine is fifty dollars per day for each of the sixty-two days the appellant was found to be in violation, resulting in a total fine of $3,100 assessed against the appellant." *Id.* at 433. *Town of Nolensville* supports the city court's imposition of a continuing $50 per day fine against the Paduchs, and their argument that the city court was without authority to impose such a fine is without merit. *See also City of Chattanooga v. Davis,* 54 S.W.3d 248 (Tenn.2001).

### VI.   *Statute of Limitations*

■   The third issue we address is whether the charges against Pete Paduch were barred by the statute of limitations

for prosecution of misdemeanors. The Paduchs argue that the City's prosecution of Pete Paduch was untimely because it violated Tenn.Code Ann. § 40–2–102 which provides that "all prosecutions for misdemeanors shall be commenced within twelve (12) months next after the offense has been committed." The Paduchs state that the citation against Pete Paduch was issued in August of 2002, although the City was aware of the underlying violation over two years prior to that time.

This argument is without merit for two reasons. First, the citation issued to the Paduchs pertained to the loading dock addition constructed in 2002. The citation was issued in August, 2002. It follows, then, that their argument that the City was in violation of a twelve-month statute of limitations is necessarily without merit.

■   Further, the statute of limitations that the Paduchs argue was violated in this case is codified under the title "Criminal Procedure" and pertains to criminal misdemeanors. As recognized by the Tennessee Supreme Court in *City of Chattanooga v. Davis,* 54 S.W.3d 248, 259 (Tenn.2001), "[t]he law now appears settled that proceedings for a municipal ordinance violation are civil in nature, *at least in terms of technical application of procedure* and for pursuing avenues of appeal." (Emphasis added.) *See also City of Chattanooga v. Myers,* 787 S.W.2d 921, 928 (Tenn. 1990)("[F]or 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil for the purposes of procedure and appeal...."). In *Metropolitan Gov't. of Nashville & Davidson County v. Allen,* 529 S.W.2d 699, 707 (Tenn.1975), the Court further stated as follows:

Procedurally, cases involving violation of city ordinances continue to be civil in nature.

They are in the nature of an action for debt. They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations....

(Citations omitted.)

■ As we have noted on prior occasion, "[t]he running of a statute of limitation nullifies a party's remedy, and, as such, it is a procedural mechanism." *Bruce v. Hamilton,* 894 S.W.2d 274, 276 (Tenn.Ct. App.1994). *See also McDonald v. Ishee,* [ no C/A no.] 2000 WL 33774561 (Tenn. Ct.App. W.S., filed May 31, 2000) and 51 Am.Jur. 2d Limitation of Actions § 371. Because Tenn.Code Ann. § 40–2–102 pertains to criminal misdemeanors, and this case involves a matter of civil procedure, the Paduchs' argument that the City violated that statute in its prosecution of Pete Paduch is without merit.

### VII. Modification of Building

The next issue we address is whether the city court and circuit court erred in requiring that the Paduchs affirmatively modify the Hometech building as required remediation.

In their appellate brief, the Paduchs state as follows:

The City Court's order required the Paduchs to take remedial steps relating to connecting of the 15,000 square foot shed to the existing manufacturing facility. The Circuit Court on appeal was even more specific in its requirements that Pete Paduch "disconnect" the 15,-000 foot metal storage shed from the manufacturing building.....

(Internal references to record omitted.)

■ We have carefully reviewed the orders referenced by the Paduchs in support of the above statements, and we find noth-

ing in those orders that required that the Paduchs affirmatively modify the Hometech building in any specific way such as by disconnecting the 15,000–square–foot addition from the main building. By these orders, the courts merely required that the Paduchs either comply with the ordinance or incur a fine, and the Paduchs present no authority supporting their argument that the courts erred in this regard. The Paduchs apparently insist that the courts were without jurisdiction to require anything other than payment of a $50 fine, alluding to their prior argument which relied upon Article VI, Section 14 of the Tennessee Constitution. However, as noted by the Tennessee Supreme Court in *City of Chattanooga v. Davis,* 54 S.W.3d 248, 263 (Tenn.2001), "the Fifty–Dollar Fines Clause does not apply to those measures that serve primarily remedial goals." We find no error in the referenced orders as to the requirements set forth therein, and we find no merit in the Paduchs' argument otherwise.

### VIII. Waiver of Ordinance

■ The issue we address next is whether the evidence preponderated in favor of waiving the ordinance requirement that a fire control device be installed in the Hometech building.

The Paduchs note that the building code "allows the city building official to waive the requirement of a sprinkler because of the nature of the contents of the building." Apparently, the Paduchs argue that waiver of this requirement was appropriate because the 15,000–square–foot addition to the Hometech building was used to store noncombustible metal, and no manufacturing occurred there, as confirmed by the testimony[1] of Alfred Day Hancock, Jr.,

---

1. The Paduchs indicate that this testimony appears at "Vol. IV, p. 226, line 14–p. 244, line 8." Our review of the record reveals that volume IV ends on page 172. We will as-

assistant director of the state fire marshall's office.

Contrary to the Paduchs' assertions, the referenced testimony of Mr. Hancock does not confirm that the 15,000–square–foot addition to the building was used to store noncombustible material or that it was not used for manufacturing. In any event, the fact that noncombustible materials were stored in the addition does not preclude combustible materials from also being stored there, and evidence was presented that combustible materials were stored there. In that regard, we note the following testimony of local realtor, Karen Barnett:

Q. Have you observed—from that testimony, have you observed combustible products and things other than metal in the back of the 15,000 square foot addition?

A. The wood that we cut up was back there. It was in there in the dry.

. . .

It was lengths of log that were cut square, maybe a little than four by four size or four by fours. That's what it was and they were back there in stacks.

Ms. Barnett's testimony was corroborated by the following testimony of former city public works director, Charles Harmon, who visited the Hometech building in September of 2000 and in April of 2002:

Q. Have you on either of those two occasions observed things within this rear 15,000 square foot building that would be inconsistent with the representations that Mayor [Pete] Paduch made to the Building Codes Board about this building?

A. Well, my first visit in 2000, September 2000, was after the State Fire Marshall had made his inspection and submitted his report. And an arrangement had been made for several staff to come out and view the facility. When we walked back again and saw the air compressor there, there was a stack of lumber in the left-hand corner of the 15,000 square foot section somewhere in that neighborhood. Yes, Sir.

The evidence presented by the City shows that the 15,000–square–foot addition contained combustible materials and was, therefore, at risk of fire. The Paduchs' argument that there is a preponderance of evidence to the contrary and that the requirement of a fire control device should have been waived is not supported by the record and is without merit.

## IX. Assessment of Costs

The sixth issue we address is whether the circuit court abused its discretion by taxing the Paduchs with costs in this case.

The Paduchs argue that the circuit court erred in taxing them with "discretionary costs and other costs." The Paduchs present no reference to the record or supporting authority with respect to this argument. They state that "[a]ssuming this Court sets aside the excessive fines and remediation requirements, then it would follow that this Court should set aside the taxing of the discretionary costs to the appellants." In view of the fact that we have not set aside any fines or remediation requirements, this issue is moot. Regardless, we find no abuse of discretion in the award of costs in this case.

sume that the Paduchs intended to reference volume VI which does contain testimony of

Mr. Hancock at the pages noted.

### X. Frivolous Appeal

The final issue we address in this case is whether the City should be awarded damages upon grounds that the present appeal is frivolous. In our discretion, we decline to grant such an award.

### XI. Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed. Costs of appeal are adjudged against the appellants, Pete and Ben Paduch.